UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN

| | |
|---|---|
| LUSCIOUS SEAFOOD LLC; | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : **Court No. 24-00069** |
| | : |
| UNITED STATES OF AMERICA; | : **PUBLIC VERSION** |
| | : Business Proprietary Information |
| | : deleted from within Brackets [ ] on |
| | : Pages 18-23 |
| | : |
| Defendant, | : |
| | : |
| and | : |
| | : |
| NTSF SEAFOODS JOINT STOCK COMPANY; | : |
| BIEN DONG SEAFOOD COMPANY LTD; | : |
| CATFISH FARMERS OF AMERICA; | : |
| AMERICA'S CATCH, INC.; ALABAMA | : |
| CATFISH, LLC; CONSOLIDATED CATFISH | : |
| COMPANIES, LLC; DELTA PRIDE CATFISH, | : |
| INC.; GUIDRY'S CATFISH, INC.; HEARTLAND | : |
| CATFISH COMPANY; MAGNOLIA | : |
| PROCESSING INC.; SIMMONS FARM RAISED | : |
| CATFISH, INC. | : |
| | : |
| Defendant-Intervenors. | : |

PLAINTIFF LUSCIOUS SEAFOOD LLC'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR JUDGMENT ON THE AGENCY RECORD

Respectfully Submitted,

/s/ Camelia C. Mazard
Camelia C. Mazard
Andre P. Barlow

*Counsel to Luscious Seafood LLC*
Doyle, Barlow & Mazard PLLC
1825 K St. NW, Suite 950
Washington, DC 20006

Dated:  September 13, 2024

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION .................................................................................................1 | |
| II. | STATEMENT PURSUANT TO RULE 56.2 (c) .........................................................1 | |
| | A. The Administrative Determination under Review ...................................................1 | |
| | B. Issues of Law Presented ...........................................................................................1 | |
| | C. Summary of Arguments............................................................................................2 | |
| III. | STATEMENT OF FACTS RELEVANT TO THE ISSUES .......................................4 | |
| IV | STANDARD OF REVIEW...........................................................................................4 | |
| V. | ARGUMENTS ...............................................................................................................7 | |
| | A. Factual Background .................................................................................................7 | |
| | B. Commerce's Standing Analysis Was Not in Accordance with Law ......................9 | |

1. Commerce's Application of a Bona Fide Analysis to Luscious Was Not in Accordance with Law As it Did Not Meet Statutory Obligations ........................10

2. Commerce's Explanation for Not Finding Luscious Had Standing Was Not Satisfactory or Reasonable, but Was Arbitrary and Capricious ...........................12
a. Commerce Singled Out Luscious for Special Scrutiny and Subjected it to Standards Not Applied in Other Reviews..............................................................14
b. Commerce's Actions Were Inconsistent Internally and Self-Contradictory ....17
c. Applying to Luscious Minimum Requirements of Domestic Activity Was Arbitrary and Capricious ......................................................................................18
d. Commerce's Findings Failed to Consider Important Aspects of the Market by Imposing an Arbitrary Standard Relating to Luscious' Period of Operation ........20
e. Applying to Luscious Minimum Requirements of Domestic Origin Was Arbitrary and Capricious ......................................................................................21

3. Commerce's Interpretation and Application of the Statute with Respect to Luscious is not Due any Deference ......................................................................23

| | | |
|---|---|---|
| VI. | CONCLUSION AND PRAYER FOR RELIEF............................................................24 | |

## TABLE OF AUTHORITIES

### STATUTES

5 U.S.C. § 706(2)(A) …………………………………………………………………...6
19 U.S.C. § 1516a (a)(2)(B)(iii) ………………………………………………………...1
19 U.S.C. § 1516a(b) ……………………………………………………………… 23
19 U.S.C. § 1516a(b)(l)(A) …………………………………………………………… 5
19 U.S.C. § 1516a(b)(1)(B)(i) ………………………………………………………… 4
19 U.S.C. §1673(2)(B) …………………………………………………………………… 20
19 U.S.C. §1677(4)(C)(ii) …………………………………………………………… 20
19 U.S.C. § 1677(9) ……………………………………………………………………… 2
19 U.S.C. § 1677(9)(C) ………………………………………………………… 2, 11
19 U.S.C. §1677(33)(A)-(G) ………………………………………………………… 21
19 U.S.C. §1975(a)(2)(B) ……………………………………………………………..10

### REGULATIONS

19 C.F.R. § 351.213(b) ………………………………………………………………...2
19 C.F.R. § 351.214 (a)-(b), (f) & (k)..………………………………………………… 10

### CASES

*Asociacion Colombiana Exportadores de Flores v. United States*
    40 F. Supp. 2d 466, 472 (Ct. Int'l Trade 1999).....……………………………… 5
*Atlantic Sugar, Ltd. v. United States*
    744 F.2d 1556, 1562 (Fed. Cir. 1984) …………...……………………………… 5
*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*
    419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974) …………………….….. 6
*Brother Indus. (USA), Inc. v. United States*
    16 CIT 789, 794, 801 F. Supp. 751, 757 (1992) ……………………………….... 11
*Changzhou Wujin Fine Chem. Factory Co., Ltd. V. United States*
    701 F.3d 1367, 1372 (Fed. Cir. 2012) …………………………………….......... 4, 6, 17
*Consol. Bearings Co. v. United States*
    348 F.3d 997, 1007 (Fed. Cir. 2003) …………………………………………… 6
*Consolidated Edison Corp. v. Labor Board*
    305 U.S. 197, 229 (1938) ………………...……………………………………..4-5
*Diversified Products Corp. v. United States*
    6 CIT 155, 161 (1983) …………...……………………………………………… 5
*Jiangsu Jiasheng Photovoltaic Tech. v. United States*
    28 F. Supp. 3d 1317, 1323 (2014) ……………………………………………….. 6

*Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of Commerce, et al.*
    144 S.Ct. 2244 (2024) ……………………………………………………………...7, 23
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*
    463 U.S. 29, 43 (1983) …………………………………..……………………….…….5, 6
*Shandong Rongxin Import & Export Co., Ltd. v. United States*
    203 F. Supp. 3d 1327, 1340-45, 1397 (CIT 2017)………………………......10, 11,13
*SKF USA Inc. v. United States*
    263 F.3d 1369, 1382 (Fed. Cir. 2001) ……………………………………………. 5-7
*SNR Roulements v. United States*
    402 F.3d 1358, 1361 (Fed Cir. 2005) …………………………………………… 4
*Universal Camera Corp. v. NLRB*
    340 U.S. 474, 477 (1951) …………...…………………………………………4, 5
*Wujin Fine Chem. Factory Co., Ltd. v. United States*
    701 F.3d 1367, 1377 (Fed. Cir. 2012) …………………………………………..….. 6

## ADMINSTRATIVE DECISIONS

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam:*
    86 Fed. Reg. 36,102 (July 8, 2021) …………………………………………..…….. 13
*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam:*
    87 Fed. Reg. 15,912 (Mar. 21, 2022) …..………………………………………13
*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam:*
    88 Fed. Reg. 61,521 (Sep. 7, 2023) ……………………………………..….………9
*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam:*
    89 Fed. Reg. 18,595 (Dep't of Commerce Mar. 14, 2024) ….…………..………1, 9
*Fresh Garlic from the People's Republic of China:*
    85 Fed. Reg. 2,400 (Jan. 15, 2020) ..…………………………………….................. 18
*Fresh Garlic from the People's Republic of China:*
    85 Fed. Reg. 71,049 (Nov. 6, 2020) ……....…………………………....................18
*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
    87 Fed. Reg. 61,278 (Oct. 11, 2022) …. ……....……………………….…..…...........8
*Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Partial Rescission of the Antidumping Duty Administrative Review, and Final Determination of No Shipments; 2021–2022*
    89 Fed. Reg. 8.165 (Feb. 6, 2024).....…………………………………………11-12, 14-16

## I. **INTRODUCTION**

The U.S. Department of Commerce ("Commerce" or the "DOC") unlawfully determined that Plaintiff Luscious Seafood LLC ("Luscious") did not qualify as a *bona fide* wholesaler of domestic like product in its nineteenth administrative review of Certain Frozen Fish Fillets from the Socialist Republic of Vietnam. Commerce's determination was not in accordance with law, was not reasonable, was arbitrary and capricious, and an abuse of discretion. This determination adversely impacted the Plaintiff Luscious as Commerce subsequently treated Luscious' request for administrative review as invalid.

## II. **STATEMENT PURSUANT TO RULE 56.2(c)**

### A. **The Administrative Determination under Review**

This action is brought pursuant to 19 U.S.C. § 1516a (a)(2)(B)(iii) to contest Commerce's *Final Results: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results and Partial Rescission of Administrative Review; 2021–2022,* 89 Fed. Reg. 18,595 (Dep't of Commerce Mar. 14, 2024) ("*Final Results*"); Appx80209-Appx80212, and accompanying Memorandum for the Final Results of the Antidumping Duty Administrative Review: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam; 2021-2022 (Mar. 6, 2024) ("I&D Memo"), Appx80176-Appx80208.

### B. **Issues of Law Presented**

First, whether Commerce's determination that Luscious did not qualify as a *bona fide* wholesaler of domestic like product during the period of review ("POR") was in accordance with the law, or unreasonable and/or arbitrary and capricious and otherwise contrary to law.

Second, whether Commerce's treatment of Luscious' request for administrative review as invalid during the POR was unlawful as it was contrary to Commerce's practice.

## C. Summary of Arguments

In its *Final Results*, Commerce determined that Plaintiff Luscious did not qualify as a *bona fide* wholesaler of domestic like product during the POR, even though it cooperated fully in the administrative review and documented its activities as a wholesaler of the domestic like product, frozen catfish fillets, during the POR. There are two issues presented: (1) whether Commerce's determination that Luscious did not qualify as a *bona fide* wholesaler of domestic like product during the POR was in accordance with the law, or unreasonable and/or arbitrary and capricious and otherwise contrary to law; and (2) whether Commerce's finding that Luscious' request for administrative review is invalid was in accordance with law given that its finding is contrary to practice.

The U.S. Court of International Trade ("CIT") should find Commerce's determination with respect to Luscious was wrong for the following reasons:

First, as discussed further below, Commerce had the facts wrong.

Second, in its standing memo pertaining to Luscious, Commerce states that with respect to attaining standing as a wholesaler of domestic like product, the focus of the analysis is on the presence of *bona fide* wholesaling operations.

However, the statute only states what interested parties may participate in an antidumping proceeding. 19 U.S.C. § 1677(9). The relevant sub-provision is 19 U.S.C. § 1677(9)(C), which allows an interested party to be a "manufacturer, producer, or wholesaler in the United States of a domestic like product." *Id.* (emphasis added). And Commerce regulation 19 C.F.R. § 351.213(b) states the only requirements for a "domestic" interested party to request

2

an administrative review of an antidumping duty order. Accordingly, on its face, neither the statute, nor Commerce's own regulations require Commerce to analyze the presence of *bona fide* wholesaling operations to attain standing.

Third, the CIT held that Commerce may presume standing, until presented with evidence that undermines the legitimacy of standing. However, when Commerce addressed the evidence in Luscious's case and examined the data regarding whether Luscious qualified as a *bona fide* wholesaler of domestic like product before it could request a review during the POR, it did not provide a satisfactory explanation for choosing its position. Instead, the DOC applied incredibly stringent documentation requirements to Luscious, demanded in-depth scrutiny not mandated to others, and requested unnecessary information from Luscious as part of its standing analysis. Luscious complied with all of Commerce's requests, and provided Commerce with credible documents that had probative value demonstrating that (1) during the POR (2) it was a U.S. wholesaler of "domestic like product" with standing to request a review because Luscious made at least one sale of the domestic like product during the POR. Therefore, the claims provided by Luscious that it was a domestic wholesaler interested party should have allowed it to request an administrative review successfully.

Fourth, the recent decision overturning the so-called "Chevron doctrine," allowing significant deference to agency discretion, provides further grounds for rejecting Commerce's over-reach in interpreting the statute and applying it here. The Supreme Court established that the courts have the authority to interpret the statute and are not to defer to the agency's interpretation. The statute allows wholesalers to request reviews as domestic interested parties and nothing in Commerce's analysis disproved Luscious' legitimate status as a wholesaler. The

only question to answer was, "did Luscious engage in wholesaling of the domestic like product during the POR?" And the answer to that question is clearly, "yes."

Commerce ignored the statute, case law and its administrative practices in acting arbitrarily and capriciously. Accordingly, the entire premise used by Commerce to deny Luscious' wholesaler status was invalid because it was otherwise not in accordance with the law, and was not made reasonably. Commerce now should be required to use standards that are neither arbitrary nor capricious to determine whether Luscious was qualified as a *bona fide* wholesaler of domestic like product during the POR. And when it does so, it should find that Luscious' request for administrative review was valid.

## III. **STATEMENT OF FACTS RELEVANT TO THE ISSUES**

The statement of facts relevant to these issues is presented as an introduction to the substantive arguments discussed below.

## IV. **STANDARD OF REVIEW**

In reviewing a Commerce antidumping duty determination, this Court will hold unlawful determinations that are unsupported by substantial evidence on the record, or not otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i); *accord SNR Roulements v. United States*, 402 F.3d 1358, 1361 (Fed Cir. 2005). And where Commerce's methodology is questioned for its accordance with law, "Commerce's decision will be set aside if it is arbitrary and capricious." *Changzhou Wujin Fine Chem. Factory Co., Ltd. V. United States*, 701 F.3d 1367, 1372 (Fed. Cir. 2012) (hereafter "*Changzhou*"). Both prongs of review are relevant in this case.

First, "{s}ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) ("Universal Camera"), *quoting*

4

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938). Furthermore,

"substantial evidence" must be measured by a review of the record as a whole, "including

whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United

States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted).

However, "it is appropriate to set aside the ITA's decision when the court 'cannot

conscientiously find that the evidence supporting that decision is substantial, when viewed in

the light that the record in its entirety furnishes, including the body of evidence opposed to

{its} view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983), *quoting

Universal Camera*, 340 U.S. at 488. Moreover, when substantial evidence is not utilized, such

action is tantamount to the use of speculation to make a determination. *See Asociacion

Colombiana Exportadores de Flores v. United States*, 40 F. Supp. 2d 466, 472 (Ct. Int'l Trade

1999) (holding that speculation cannot be a basis for finding substantial evidence on the

record).

Second, to this end, the Court will hold as unlawful an administrative decision that is

arbitrary, capricious, or an abuse of discretion. *See* 19 U.S.C. § 1516a(b)(l)(A). Normally, an

agency decision would be arbitrary and capricious "if the agency has relied on factors which

Congress has not intended it to consider, entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product

of agency expertise." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 43 (1983) ("*Motor Vehicle Mfrs*").

It is well-established that an agency action is arbitrary when the agency offers

insufficient reasons for treating similar situations differently. *SKF USA Inc. v. United States*,

263 F.3d 1369, 1382 (Fed. Cir. 2001) (quotation marks and citation omitted). An agency

5

"must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs.*, 463 U.S. at 48 (citations omitted). Moreover, Commerce acts arbitrarily and capriciously when it "consistently follow{s} a contrary practice in similar circumstances and provide{s} no reasonable explanation for the change in practice." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003).

"{A} reviewing court must apply both standards {substantial evidence, and arbitrary and capricious or contrary to law}, and "an agency's finding may be supported by substantial evidence," yet "nonetheless reflect arbitrary and capricious action." *Changzhou,* 701 F.3d at 1377. *Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (*quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974). Therefore, while the substantial evidence standard applies to review of factual determinations, where the Court evaluates an agency's reasoning, it will review it under the arbitrary and capricious standard (or contrary to law) standard." *Id.* (*citing Motor Vehicle Mfrs.*, 463 U.S. at 48–49; *see* Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (2012) (directing that the Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

"{W}here the agency is vested with discretion to set the procedure by which it administers its governing statute, the court reviews such decisions for abuse of discretion....In abuse of discretion review, 'an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.'" *Jiangsu Jiasheng Photovoltaic Tech. v. United States*, 28 F. Supp. 3d 1317, 1323 (2014) (quoting *SKF USA*,

6

263 F.3d at 1382). Accordingly, Commerce may not exert its authority in an arbitrary or
capricious manner.

Specifically, an administering agency's actions cannot be inconsistent internally and

self-contradictory. Nor can the agency treat similarly situated parties differently. Nor can it

fail to consider an important aspect of a problem. If it does, the agency's decisions are

arbitrary and capricious and must be subject to reversal.

Further, in *Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of*

*Commerce, et al.*, 144 S.Ct. 2244 (2024) ("*Loper Bright*"), the Supreme Court established that

Courts have the authority to interpret the statute and are not to defer to the agency's

interpretation. As the Court states:

> *Chevron* is overruled. Courts must exercise their independent judgment in deciding
> whether an agency has acted within its statutory authority, as the APA requires.
> Careful attention to the judgment of the Executive Branch may help inform that
> inquiry. And when a particular statute delegates authority to an agency consistent
> with constitutional limits, courts must respect the delegation, while ensuring that
> the agency acts within it. But courts need not and under the APA may not defer to
> an agency interpretation of the law simply because a statute is ambiguous.

*Id.* at 2273.

## V. ARGUMENTS

### A. Factual Background

Plaintiff Luscious filed a request for administrative review for the first time in these

proceedings on August 31, 2022. Appx80000-Appx80024. In that letter, Luscious requested

reviews of 136 exporter/producers of subject merchandise, and also named the Vietnam-wide

Entity in its review request. *Id.* Commerce consolidated certain entities with similar names from

Luscious's and other parties' review requests then initiated reviews of 133 exporter/producers, in

7

addition to the Vietnam-wide Entity. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 61,278 (Oct. 11, 2022). Appx80029-Appx80040.

Commerce issued an initial wholesaler questionnaire to Luscious on October 14, 2022. Appx80025-Appx80028. Luscious's original wholesaler questionnaire response was submitted on October 25, 2022 ("Luscious's 10/25 Wholesaler QR"). Appx1001-Appx1051 (confidential record); Appx80041-Appx80063 (public version). Commerce then issued a supplemental wholesaler questionnaire on December 13, 2022. Appx1080-Appx1083 (confidential record); Appx80064-Appx80067(public version). Luscious's supplemental wholesaler questionnaire response was submitted on January 3, 2023 ("Luscious's 1/3 Supp. Wholesaler QR"). Appx1084-Appx1208 (confidential record); Appx80068-Appx80091 (public version).

The *Final Results*, relevant to this argument, are based on Luscious' responses to Commerce's initial wholesaler questionnaire and one supplemental wholesaler questionnaire. These questionnaires focused on whether Luscious could meet some *bona fide* sales analysis criteria in order to qualify as a wholesaler of the domestic like product during the POR. Luscious fully answered all the questionnaires issued by Commerce to the best of its ability.

On January 26, 2023, Defendant-Intervenors NTSF Seafoods Joint Stock Company and Bien Dong Seafood Company Ltd filed a request for Commerce to issue its standing determination. Appx80092-Appx80096. One day later, Commerce issued a memorandum stating that Luscious was not a wholesaler and immediately treated the Luscious administrative review request as void. *Memorandum to Emily Halle Re: Antidumping Administrative Review* of *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam, 2021-2022: Luscious Seafoods' Standing to Request Review* (Jan. 27, 2023) ("Commerce Standing Memo"). Appx1209-Appx1213 (confidential record); Appx80097-Appx80101 (public version).

8

Commerce's *Preliminary Results* also declined to find that Luscious had standing to request reviews during the POR and preliminarily rescinded the review for several companies that were included in Luscious' original review request. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Preliminary Results of the Antidumping Administrative Review, Preliminary Determination of No Shipments, and Notice of Intent to Rescind, in Part; 2021-2022,* 88 Fed. Reg. 61,521 (Sept. 7, 2023). Appx80154-Appx80156. *See also* Decision Memorandum for the Preliminary Results of the Antidumping Duty Administrative Review: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam; 2021-2022 (signed August 31, 2023) ("PDM"). Appx80129-Appx80153. As a result of this decision, Commerce preliminarily found also that Luscious' review requests were not valid.

Luscious filed its Case Brief on January 3, 2024. Appx1214-Appx1232 (confidential record); Appx80157-Appx80175 (public version).

Commerce's *Final Results* continued to find that Luscious did not qualify as a *bona fide* wholesaler of domestic like product during the POR and, thus, did not have standing to request a review as a domestic interested party; and made final the rescission of review with respect to companies for which Luscious requested a review. *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results and Partial Rescission of Administrative Review; 2021–2022,* 89 Fed. Reg. 18,595 (Dep't of Commerce Mar. 14, 2024). *Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam; 2021-2022* (Mar. 6, 2024) ("I&D Memo"), Appx80176-Appx80208.

**B. Commerce's Standing Analysis Was Not in Accordance with Law**

Plaintiff Luscious requested an administrative review of a number exporters/producers or

9

exporter/producer groups, in its initial review request. *See* Letter to Commerce, dated August

31, 2022. Appx80000-Appx80024. In that letter, Plaintiff Luscious indicated that it qualified as

a <u>wholesaler</u> of the domestic like product and thus, a domestic interested party under section

771(9)(C) of the Tariff Act of 1930, as amended. (emphasis added). *Id.* This review was the

first time Plaintiff Luscious requested review as a wholesaler.

### 1. Commerce's Application of a *Bona Fide* Analysis to Luscious Was Not in Accordance with Law As it Did Not Meet Statutory Obligations

In denying Luscious' standing as a wholesaler and domestic interested party, Commerce

claimed that "with respect to attaining standing as a wholesaler of domestic like product, the

focus of the analysis is on the presence of *bona fide* wholesaling operations". Commerce

Standing Memo at 3. Appx1209-Appx1213 (confidential record); Appx80097-Appx80102

(public version). However, wholesalers are not required to meet the same *bona fide* sales

analysis criteria that Commerce examines in other administrative contexts – for example, as part

of new shipper reviews.

In fact, neither the statute nor regulations require a *bona fide* analysis for purposes of

analyzing whether a wholesaler has standing to request a review. The statute does not require a

*bona fide* analysis for wholesalers, as it does for new producers and exporters, where it outlines

those analytical factors explicitly. *See* 19 U.S.C. §1975 (a)(2)(B); *see also* 19 C.F.R. § 351.214

(a), (b), (f) & (k).

This Court specifically held that: (1) Commerce does not need to complete a *bona fide*

sales analysis for <u>domestic interested party standing</u> as it does for new shipper reviews; and (2)

the burden of producing evidence to rebut standing falls to the party challenging it. *See*

*Shandong Rongxin Import & Export Co., Ltd. v. United States*, 203 F. Supp. 3d 1327, 1340-45

(CIT 2017) ("*Shandong Rongxin*") (emphasis added).

10

In *Shandong Rongxin*, Rongxin was the party that opposed Dixon's domestic interested party standing, and initially argued that the evidence in the record must demonstrate *bona fide* production during the POR. *Id.* at 1397. However, this Court in *Shandong Rongxin* stated that "{n}either the statute nor its legislative history indicate (sic) that Commerce must narrow the range of potential interested parties by applying the inquiry that it uses in new shipper reviews to determine whether firm has a bona fide domestic production operation. A domestic 'interested party' is 'a manufacturer, producer, or wholesaler in the United States of a domestic like product.'" *Id., quoting* 19 U.S.C. § 1677(9)(C). As explained in *Shandong Rongxin*, "{t}he terms 'manufacturer, producer, or wholesaler' are not defined by statute. *Shandong Rongxin*, 203 F. Supp. 3d at 1397. (emphasis added).

This Court in *Shandong Rongxin* further held that "{t}he legislative history of the domestic interested party provision states that 'standing requirements should be administered to provide an opportunity for relief for an adversely affected industry....'" *Id.* (*quoting Brother Indus. (USA), Inc. v. United States*, 16 CIT 789, 794, 801 F. Supp. 751, 757 (1992)) (*quoting* S. Rep. No. 96-249, 96th Cong., 1st Sess. 63 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 449) (internal citation and alteration omitted). Accordingly, this Court found that the standing requirement was intended to be construed liberally. *Shandong Rongxin*, 203 F. Supp. 3d at 1397.

Also, just earlier this year, Commerce again addressed the issue of whether a party provided sufficient record evidence that it was a wholesaler during the POR. In the recent review of *Xanthan Gum from China*, Commerce granted a new party wholesaler status, stating the following:

> SAM requested an administrative review stating that it is a wholesaler in the United States of the domestic like product. This is the first time SAM has requested review as a wholesaler. The petitioner argues that Commerce should disregard SAM's status as a wholesaler because: (1) the U.S. purchases and sales of the domestic like product that

11

SAM purportedly made during the POR are not *bona fide*; (2) the wholesaled merchandise are not domestic like products because there is no evidence that the merchandise sold was domestically produced; and (3) there is no evidence on the record that SAM sold the domestic like product during the POR.

> The petitioner argues that if Commerce applies the petitioner's recommended *bona fide* analysis to the purchase and sales information submitted by SAM, Commerce will conclude that SAM's transactions are not *bona fide*, and thus, determine that SAM lacks standing to request a review. We disagree with the petitioner as to the analytical standard that should be applied. Neither the statute nor regulations require a *bona fide* analysis for purposes of analyzing whether a wholesaler has standing to request a review.

*Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty*

*Administrative Review, Partial Rescission of the Antidumping Duty Administrative Review, and*

*Final Determination of No Shipments; 2021–2022*, 89 Fed. Reg. 8.165 (Feb. 6, 2024) ("*Xanthan*

*Gum from China*"), and accompanying Issues and Decision Memorandum for the Final Results

of the 2021-2022 Administrative Review of the Antidumping Duty Order on Xanthan Gum from

the People's Republic of China ("IDM") at Comm. 6.

Additionally, Commerce in *Xanthan Gum from China* found that the CIT held that

Commerce may presume standing, until presented with evidence that undermines the legitimacy

of standing. *Id.* At that point, Commerce need only address the evidence, examine the data, and

provide a satisfactory explanation for choosing one position over the other. *Id.*

### 2. Commerce's Explanation for Not Finding Luscious Had Standing Was Not Satisfactory or Reasonable, but Was Arbitrary and Capricious

Although Commerce has been given discretion in the past on how to analyze *bona fide*

wholesaling operations, Commerce's interpretation and application of its analysis with respect to

Luscious was arbitrary and capricious. Domestic interested party status does not require any

particular period of operation, volume of sales, or value of sales.

Commerce stated in prior administrative reviews in this very proceeding that it "does not

impose a requirement regarding the percentage of commercial activity that must be dedicated to

12

domestic production or wholesaling in order to qualify for 'domestic interested party' status for the purposes of requesting administrative reviews." *See, e.g., Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018-2019*, 86 Fed. Reg. 36,102 (July 8, 2021) (*Fish Fillets AR16*), and accompanying IDM at Comm. 1 (Commerce stated that the party need only "engage in wholesaling activity; there is no requirement regarding the volume or source of such wholesaled merchandise"); *see also Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 87 Fed. Reg. 15,912 (Mar. 21, 2022) (Fish Fillets from Vietnam 2019-2020), and accompanying IDM at Comm. 1 (Commerce stated that "neither the Act nor the regulations impose a minimum domestic activity requirement on parties seeking to request a review").

And this Court held the same. In *Shangdong Rongxin*, Rongxin actually argued that the party seeking domestic interested party standing (Dixon) did not present legally relevant standards supportive of these *de minimis* production arguments for the purposes of "interested party" status. *Shangdong Rongxin*, 203 F. Supp. 3d at 1397. However, in *Shangdong Rongxin*, this Court held that Commerce reasonably concluded that certain photographs…did not preclude a determination that Dixon produced pencils in the United States during the POR when Rongxin presented photographs to Commerce showing "only a miniscule, non-representative sample" of sales in the United States. *Id.* Rongxin also alleged that there was not "an iota of evidence on the record that it sells anywhere in the world pencils manufactured in the U.S." *Id.* Yet, Commerce found that Dixon was an interested party, and this Court agreed.

13

Given past precedent, Commerce should not have denied Luscious's status as a

wholesaler based on any factors relating to its period of operation, volume of sales and value of

sales. Yet Commerce denied Luscious's status as an interested party based on these very factors

that are not delineated in any statute, regulation, case law or administrative proceeding.

### a.  Commerce Singled Out Luscious for Special Scrutiny and Subjected it to Standards Not Applied in Other Reviews

Luscious was the subject of special scrutiny that was not directed toward another

wholesaler party in this review, and that normally is not undertaken by Commerce in the context

of other administrative reviews. While Luscious understands that Commerce reasonably may

require some proof of eligibility for interested parties, the standard should not be, and usually is

not, the "high hurdle" applied to Luscious. In *Xanthan Gum from China*, for example,

Commerce found that the wholesaler requesting standing, SAM, only needed to provide

information indicating that it purchased xanthan gum from a domestic manufacturer and sold

xanthan gum to a domestic purchaser. *Xanthan Gum from China* and accompanying IDM at

Comment 6. And based on that record evidence alone, Commerce found SAM's purchases and

sales of the domestic like product to be legitimate business transactions. *Id.*

In that case, petitioner claimed that the commercial documents initially provided by SAM

did not amount to substantial record evidence demonstrating that SAM had standing as an

interested party. *Id.* There, petitioner purported discrepancies similar to the ones in Luscious'

proceeding - in the purchase and sales information submitted by SAM - that called the legitimacy

of its wholesaler status into question. Specifically, in that proceeding, Petitioner initially alleged

the following for SAM's sales documentation:

> SAM failed to meet the burden of demonstrating a sale of the domestic like product
> was actually made during the POR. SAM's sole claim to standing as a wholesaler
> of domestic like product during the POR is based on an alleged sale (sale 1) of
> xanthan gum by a domestic producer. For the set of "sale 1" transactions, SAM

14

initially provided a purchase order, an invoice from one entity to SAM, and an invoice from SAM to another entity….SAM provided no proof of payment for any of the commercial transactions, packing lists, or bills of lading demonstrating the actual movement of the domestic like product. Moreover, the majority of the documents it did provide are self-contradictory or contradict other documents that SAM submitted. For the commercial documents related to a second set of transactions of the domestic like product (sale 2), Petitioner claimed the purchase occurred after the end of the POR. SAM claims it issued separate purchase orders to two entities for one product, and the connection SAM made regarding these transactions is a conclusory leap unsupported by substantial evidence. *Id.*

As in Luscious's case, Commerce then issued a supplemental questionnaire to SAM but only requested basic commercial documents. Yet, Petitioner alleged again that SAM failed to provide many of the documents Commerce requested in its supplemental questionnaire response arguing that Commerce:

> requested 24 types of documents in its supplemental questionnaire, but SAM provided only six. Four of the six documents it provided contain **discrepancies** in terms of shipping, invoicing, and payment. For sale 1, the address on a bill of lading did not align with the delivery terms on both an invoice and purchase order. For both sales 1 and 2, petitioner claimed the proof of payment documents provided by SAM for the purchase of domestically-produced xanthan gum are unreliable, as they were not from bank records or other third-party evidence, contradict associated invoices from the seller(s) of xanthan gum, and feature several errors. The computer system SAM uses to manage its invoices and payments appears to not be able to denote certain items consistently and correctly….There are also contradictions between…values recorded in documents. For sale 2, SAM provided proof of payment from SAM's customer…rather than providing third-party evidence demonstrating that an entity had paid SAM for its purchase of domestically-produced xanthan gum, the screenshot appeared to be…noticeably different than the status that appears in previous documents SAM provided as proof of payment….SAM never provided a bill of lading, packing list, or any other commercial document demonstrating the xanthan gum had ever been delivered or picked up despite Commerce's requests. SAM provided no explanation for why it did not provide this documentation. *Id.* (emphasis added).

Notably, Commerce did not subject SAM to further scrutiny as to the source of its funding, the length of time it was in operation, or the number of transactions undertaken during the POR. Instead, Commerce only required SAM to provide evidence that it **made**

15

**at least one sale** during the POR, and then the company was afforded interested party status. And in Luscious's case, Commerce actually acknowledged that the "discrepancies" it found with respect to Luscious, if taken on their own, "might not warrant a finding that Luscious Seafoods lacks standing as a U.S.-based wholesaler", but then concluded that "taken together," the listed concerns raised a number of "fundamental questions regarding Luscious Seafoods' operations…". Commerce Standing Memo at 4. Appx1209-Appx1213 (confidential record); Appx80097-Appx80102 (public version).

Additionally, Commerce has found:

> "Wholesaler" is not defined in the statute or regulations, and the petitioner has failed to demonstrate that the statute requires this additional qualification of wholesaling activity. Further, although producers must produce their product domestically to be a domestic interested party, producers and wholesalers have distinct business operations; thus, we found the requirements for producers did not apply to wholesalers, which are separate from producers under the Act. Additional, Commerce has found that the Act does not impose minimum requirements of "domestic activity" or "domestic origin" to prove wholesaler standing, and the CIT had not reversed its previous findings…. *Xanthan Gum from China* and accompanying IDM at Comment 6.

Ultimately, Commerce found that SAM provided evidence of making at least one, if not two, domestic sales of xanthan gum during the POR, despite the petitioner's claims that it did not do so. It also stated that although case precedent relies on POR-specific sales when determining interested party standing, **there is no rule that the standing of domestic parties is contingent on sales within the POR**. *Id.* (emphasis added). Commerce then found that even if it did not rely on the second sale of domestic like product SAM made after the POR, SAM's first sale of the domestic like product was within the POR and constituted domestic wholesaling activity. *Id.* For the foregoing reasons,

16

Commerce found SAM had standing as a domestic interested party (*i.e.*, a wholesaler) that bought and sold domestic like product during the POR.

Luscious, on the other hand, was subject to arbitrary and capricious "domestic activity" and "domestic origin" tests based on its time in business, sources of funding for transactions, number of transactions with affiliated parties and profitability. As noted above, Commerce's analysis should have recognized that domestic interested party for a wholesaler is different from all other interested parties. Luscious provided commercial documents and supporting bank statements showing that it made at least one sale during the POR that included the purchase and resale of the domestic like product, which also was legitimate and consistent with normal business activity. None of the other additional "discrepancies" or "concerns" relating to Luscious's operations justified denying Luscious's standing as a wholesaler. And, for the most part, none of these standards were applied to other interested parties – such as requesting domestic producers or importers.

### b. Commerce's Actions Were Inconsistent Internally and Self-Contradictory

As noted above, when Commerce's methodology is challenged on the ground that it is not in accordance with law, this Court must look to see whether the agency's decision was arbitrary and capricious, reviewing that decision under "the Administrative Procedure Act and any other applicable law." *Changzhou*, 701 F.3d at 1374 (citations omitted). While Luscious recognizes Commerce's duty to analyze Luscious' status in light of challenges by various parties, Commerce's analysis in this case treated similarly situated parties differently. In the underlying administrative review, as noted below, Luscious provided Commerce with a specific example of how Commerce applied a different standard to Luscious than it applied to its analysis of another party's wholesaler status.

17

In the past, Commerce rescinded requests for administrative review when a party was unable to provide documentary evidence supporting quantity and value of subject merchandise during the POR. *See Fresh Garlic from the People's Republic of China: Preliminary Results, Preliminary Rescission, and Final Rescission, in Part, of the 24th Antidumping Duty Administrative Review*; 2017-2018, 85 FR 2400 (Jan. 15, 2020), and accompanying PDM at 11-15. Also, Commerce denied domestic interested party standing when a party admitted that the invoice it provided to Commerce as evidence and to which it certified was altered. *See Fresh Garlic from the People's Republic of China: Final Results and Partial Rescission, of the 24th Antidumping Duty Administrative Review*; 2017-2018, 85 Fed. Reg. 71,049 (Nov. 6, 2020), and accompanying IDM at 53. However, as noted above by both this Court and Commerce, such flagrant errors are not present in the instant proceeding and absent such errors, Commerce should not have predicated Luscious' wholesaler status on any particular period of operation, volume of sales or value of sales.

### c. Applying to Luscious Minimum Requirements of Domestic Activity Was Arbitrary and Capricious

Commerce also claimed that Luscious's business transactions entailed [

]. *Id.* at 3-4. Experiencing [

] should not have been grounds for finding

that Luscious was not a *bona fide* wholesaler. Luscious explained that the company encountered [

].  Luscious's 1/3 Supp. Wholesaler QR at 5.  Appx1084-Appx1208 (confidential record); Appx80068-Appx80091 (public version).  However, Commerce should not have considered

[                                                           ] as factors that weighed against finding that

Luscious' business activity was *bona fide* in the context of analyzing data from other interested

18

parties. As discussed further below, Luscious' business activities during the POR were

[                                                                ].

Commerce's findings should not have applied such onerous standards to a new *domestic* interested party like Luscious. The desire to [

] is precisely why Luscious, as a new entrant to the wholesale market, requested a review of unfairly traded imports in the first place. That being said, the record actually showed that Luscious engaged in other business activities during the POR, including the sale of additional products [          ]. Luscious's 1/3 Supp. Wholesaler QR at 6 and Ex. 4. Appx1084-Appx1208 (confidential record); Appx80068-Appx80091 (public version).

Commerce also improperly found that Luscious "did not provide certain requested documentation that would have enabled Commerce to further analyze its operations, *e.g.*, supporting documents regarding the source(s) of its funding." Commerce Standing Memo at 3-4. Appx1209-Appx1213 (confidential record); Appx80097-Appx80101 (public version). In particular, Commerce found fault with Luscious providing "screenshots" of its bank accounts that did not identify the owner of the accounts or the source of the funds therein. *Id.* at 3-4. However, there is no requirement for a wholesaler (or any interested party) in an antidumping proceeding to demonstrate the source(s) of its funding to engage in its commercial transactions. As noted above, there is no precedent for a "source of funding" being a consideration as to whether a company or its transactions were *bona fide*. It is difficult to imagine what funding source would result in a finding that Luscious was not a wholesaler or that its purchases and sales were not legitimate business transactions.

19

Accordingly, such a "source of funding" criterion by Commerce was unprecedented, not

associated with any statutory or regulatory guidance, and should not have been a reasonable

basis for Commerce to deny Luscious's eligibility as a wholesaler.

> **d. Commerce's Findings Failed to Consider Important Aspects of the Market by Imposing an Arbitrary Standard Relating to Luscious' Period of Operation**

Further, Commerce raised some questions about Luscious because it had "a limited

history with respect to conducting business operations"; it was "created [

]", did not have [                                                                ].

Commerce Standing Memo at 3. However, as noted above, the statute and administrative

precedent do not establish a minimum amount of time during which a company must have been

in operation in order to be recognized as a wholesaler. In addition, there are no statutory

requirements for a wholesaler in an antidumping proceeding to have [

], particularly when such items were not otherwise required by

law. *Cf.* Commerce Standing Memo at 3-4. Appx1209-Appx1213 (confidential record);

Appx80097-Appx80101 (public version).

Further, the statute provides that antidumping or countervailing duties may be imposed if

Commerce and the U.S. International Trade Commission find that, by reason of unfair imports,

"the *establishment* of an industry" in the United States is "materially retarded". *See*, *e.g.*, 19

U.S.C. §1677(4)(C)(ii) and 19 U.S.C. §1673(2)(B) (emphasis added). A company that is not

"established" obviously might not have, like Luscious, [

]. *Id.* However, the statute makes clear that such a

company or industry would be eligible for relief from unfair imports even if it is merely in the

formative or notional stage.

It is axiomatic that Luscious would have been eligible to apply for relief from unfair imports under these statutes. However, Luscious was not recognized as a domestic interested party by Commerce during the POR because Commerce applied to Luscious a standard that is not supported by law.

### e. Applying to Luscious Minimum Requirements of Domestic Origin Was Arbitrary and Capricious

Commerce also improperly relied on erroneous analysis relating to alleged "inconsistencies" with respect to the purported [

]. Commerce Standing Memo at 4. Appx1209-Appx1213 (confidential record); Appx80097-Appx80101 (public version). Luscious acknowledged that [

]. Luscious's 1/3 Supp. Wholesaler QR at 3. Appx1084-Appx1208 (confidential record); Appx80068-Appx80091 (public version). However, the statute defines "affiliated persons" as including:

> (A) Members of a family, including brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.
> (B) Any officer or director of an organization and such organization.
> (C) Partners.
> (D) Employer and employee.
> (E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 percent or more of the outstanding voting stock or shares of any organization and such organization.
> (F) Two or more persons directly or indirectly controlling, controlled by, or under common control with, any person.
> (G) Any person who controls any other person and such other person.

*See* 19 U.S.C. §1677(33)(A)-(G). As Luscious explained in the underlying review, the relationship [                                                                      ].

Luscious's 1/3 Supp. Wholesaler QR at 3. Appx1084-Appx1208 (confidential record); Appx80068-Appx80091 (public version).

21

Further, although Commerce considered [

] should not have disqualified Luscious as a

wholesaler.  Luscious's overall purchases of [

]:

| Quantity | Value | Unit Price | Supplier |
|---|---|---|---|
| [    ] | [    ] | [    ] | [    ] |
| [    ] | [    ] | [    ] | [    ] |
| [    ] | [    ] | [    ] | [    ] |

Luscious's 1/3 Supp. Wholesaler QR at 6.  Appx1084-Appx1208 (confidential record);

Appx80068-Appx80091 (public version).  Those purchases [

].  *Id.*  The record clearly showed, accordingly, that although

Commerce found some sort of affiliation existed between Luscious and [        ], the parties

engaged in reasonable commercial transactions at arm's length prices.

Further, in the underlying proceeding, U.S. wholesaler QMC Foods Inc. ("QMC"),

[

].  *See Letter from Crowell & Moring LLP Re:*

*Administrative Review of AD Order on Certain Frozen Fish Fillets from the Socialist Republic of*

*Vietnam (08/01/21-7/31/22): QMC Response to Wholesaler Standing Questionnaire* (Oct. 26,

2022) at 12 and Ex. 3.A.  Appx1052-Appx1079 (confidential record); Appx80103-Appx80128

(public version).  By comparison, Luscious' purchase and resale [

22

]. *See, e.g.*, Luscious's 1/3 Supp. Wholesaler QR at 6. Appx1084-Appx1208 (confidential record); Appx80068-Appx80091 (public version).

Hence, when measured against another wholesaler that Commerce determined as a "domestic interested party", Luscious' transaction also should have represented *bona fide* commercial business activity. However, contrary to the standard set by this Court in *SKF USA*, Commerce never offered a sufficient reason for treating these similar situations differently. Again, Luscious understands that Commerce requires some proof of eligibility for interested parties that is reasonable -- but the agency cannot treat similar parties differently.

The record was not in dispute in terms of any material aspects that this particular business activity clearly involved a *bona fide*, wholesale trade of the domestic like product. But when compared to another party - such as QMC who was found to be a *bona fide* wholesaler during the POR - Commerce clearly applied a different standard for Luscious, with higher hurdles than it did for QMC.

### 3. Commerce's Interpretation and Application of the Statute with Respect to Luscious is not Due any Deference

The seminal question is whether Commerce's interpretation and application of the statute with respect to Luscious is due any deference. This Court must decide ultimately whether Commerce's decision was "in accordance with law". *See* 19 U.S.C. § 1516a(b).

To that effect, this Court must take notice of the recent decision overturning the so-called "Chevron doctrine," allowing significant deference to agency discretion, which provides further grounds for rejecting Commerce's over-reach in interpreting the statute and applying it to Luscious. In *Loper Bright*, the Supreme Court established that the Courts have the authority to interpret the statute and are to not defer to the agency's interpretation. Nothing in the statute relating to an interested parties' eligibility to request an administrative review supported an

23

interpretation other than that Luscious was a legitimate entity engaged in wholesale trade of domestic catfish and other products during the underlying period of review.

It is clear that Commerce overstepped its authority here. "Flagrant errors" were not present in the instant proceeding; the issues identified by Commerce also did not reflect significant changes or omissions in Luscious' response, and did not involve a major failure in Luscious' reporting methodology.

Accordingly, this Court should remand this final determination back to Commerce to find that Luscious had standing as a domestic interested party, pursuant to section 771(9)(C) of the Tariff Act of 1930. And thus, Luscious should have been able to request administrative reviews of exporters of frozen fish fillets from Vietnam in accordance with this wholesaler status. The administrative reviews Commerce rescinded of companies named in Luscious's review request must be reinstated.

## VI. CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Court should find Commerce's *Final Results* were not in accordance with the law, nor reasonable, with respect to the determination that Luscious did not qualify as a *bona fide* wholesaler of domestic like product during the POR. Plaintiff Luscious also respectfully requests that the Court remand this action to Commerce for redetermination with instructions to find that Luscious was a domestic wholesaler interested party in the nineteenth administrative review with standing to request a review—and that Commerce should not have rescinded its review regarding any companies named in Luscious's review request that made reviewable entries during the period of review.

## Word Count Certificate of Compliance

This brief has been prepared in a proportionally spaced type face using Microsoft Word 2016 in Times New Roman, 12-point font.

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth therein. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 7,313 words. This certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Camelia C. Mazard
Camelia C. Mazard
Andre P. Barlow

*Counsel to Luscious Seafood LLC*

Dated: September 13, 2024

Doyle, Barlow & Mazard PLLC
1825 K St. NW, Suite 950
Washington, DC 20006