**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| LUSCIOUS SEAFOOD LLC,      )<br>     )<br>    Plaintiff,     )<br>     )<br>    v.     )<br>     )<br>UNITED STATES,     )<br>     )<br>    Defendant,     )<br>     )<br>    and     )<br>     )<br>NTSF SEAFOODS JOINT STOCK COMPANY, )<br>BIEN DONG SEAFOOD COMPANY LTD, and )<br>CATFISH FARMERS OF AMERICA, *et. al*.,  )<br>     )<br>    Defendant-Intervenors.     )<br>     ) | Court No. 24-00069<br>Proprietary Information Removed<br>on Pages 4,5, 28, 30-33 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:
K. GARRETT KAYS
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
  Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230

KARA M. WESTERCAMP
Senior Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 305-7571
Email: kara.m.westercamp@usdoj.gov

December 13, 2024                          *Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

STATEMENT PURSUANT TO RULE 56.2 ................................................................. 2

    I.    Administrative Determination Under Review ....................................... 2

    II.    Issue Presented for Review ................................................................. 2

STATEMENT OF FACTS ................................................................................... 2

    I.    Request For Review And Commerce's Investigation Of Luscious's Standing ...... 2

    II.    Preliminary Results ......................................................................... 6

    III.    Final Results .................................................................................. 7

SUMMARY OF ARGUMENT .............................................................................. 8

ARGUMENT ................................................................................................... 8

    I.    Legal Standards .............................................................................. 8

        A.    Standard Of Review ................................................................ 8

        B.    Applicable Law And Regulations .............................................. 9

    II.    Commerce's Determination That Luscious Did Not Have Standing To Request A Review As A *Bona Fide* Wholesaler Is Supported By Substantial Evidence And In Accordance With Law ................................................. 14

        A.    Luscious Fails To Show That Commerce's Standing Determination Is Contrary To Law ................................................................. 15

            1.    Commerce Lawfully Interpreted 19 U.S.C. § 1677(9)(C) ............ 15

            2.    Commerce's Interpretation Of 19 U.S.C. § 1677(9)(C) Is Consistent With Supreme Court And Federal Circuit Precedent .................................................................. 22

        B.    Substantial Evidence Supports Commerce's Wholesaler Standing Analysis .......................................................................... 26

CONCLUSION ................................................................................................ 34

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                                                **<u>PAGE(S)</u>**

*Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*,
    102 F.4th 1252 (Fed. Cir. 2024) ......................................................................... 13, 25

*Atl. Sugar, Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984) ...................................................................................... 9

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*,
    5 F.4th 1367 (Fed. Cir. 2021) ....................................................................................... 24

*Brother Indus. (USA), Inc. v. United States*,
    801 F. Supp. 751 (Ct. Int'l Trade 1992) ....................................................................... 10

*CBOCS West, Inc. v. Humphries*,
    553 U.S. 442 (2008) ...................................................................................................... 23

*Cheng Shin Rubber Ind. Co. v. United States*,
    No. 21-00398, 2023 Ct. Intl. Trade LEXIS 19 (Ct. Int'l Trade February 13, 2023) ............... 30

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) ............................................................................................... passim

*Consol. Bearings Co. v. United States*,
    348 F.3d 997 (Fed. Cir. 2003) ...................................................................................... 28

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938) ........................................................................................................ 9

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966) ........................................................................................................ 9

*Dickerson v. United States*,
    530 U.S. 428 (2000) ...................................................................................................... 23

*Downhole Pipe & Equip., L.P. v. United States*,
    776 F.3d 1369 (Fed. Cir. 2015) ............................................................................... 19, 29

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,
    216 F.3d 1027 (Fed. Cir. 2000) .................................................................................... 24

*Fujitsu Gen. Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996) ........................................................................................ 9

*Globe Metallurgical, Inc. v. United States,*
   865 F. Supp. 2d 1269 (Ct. Int'l Trade 2012) ............................................ 32

*Halliburton Co. v. Erica P. John Fund, Inc.,*
   573 U.S. 258 (2014) ................................................................................. 23

*Hebei New Donghua Amino Acid, Co., Ltd. v. United States,*
   374 F. Supp. 2d 1333 (Ct. Int'l Trade 2005) ........................................... 12

*INS v. Elias-Zacarias,*
   502 U.S. 478 (1992) ................................................................................... 9

*Jiaxing Brother Fastener Co. v. United States,*
   822 F.3d 1289 (Fed. Cir. 2016) ............................................................... 21

*JMC Steel Corp. v. United States,*
   24 F. Supp. 3d 1290 (Ct. Int'l Trade 2014) ....................................... 26, 27

*Loper Bright Enters. v. Raimondo,*
   144 S. Ct. 2244 (2024) ...................................................................... passim

*Maracich v. Spears,*
   570 U. S. 48, 133 S. Ct. 2191, 186 L. Ed. 2d 275 (2013) ....................... 20

*Melamine Chemicals, Inc. v. United States,*
   732 F.2d 924 (Fed. Cir. 1984) ................................................................. 24

*Minebea Co. v. United States,*
   984 F.2d 1178 (Fed. Cir. 1993) ............................................................... 17

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29(1983) .................................................................................... 27

*N.M. Garlic Growers Coal. v. United States,*
   953 F.3d 1358 (Fed. Cir. 2020) ......................................................... 13, 16

*Navneet Educ. Ltd. v. United States,*
   No. 22-00132, 2023 Ct. Intl. Trade LEXIS 194,
   Slip Op. 2023-191 (Ct. Int'l Trade Dec. 29, 2023) .................................. 30

*Nippon Steel Corp. v. United States,*
   458 F.3d 1345 (Fed. Cir. 2006) ............................................................... 30

*Pokarna Engineered Stone Ltd. v. United States,*
   56 F.4th 1345 (Fed. Cir. 2023) ......................................................... 10, 15

*Qingdao Sea-Line Trading Co. v. United States*,
    766 F.3d 1378 (Fed. Cir. 2014) ................................................... 21

*Shandong Chenhe Int'l Trading Co., Ltd. v. United States*,
    No. 08-00373, 2010 Ct. Intl. Trade LEXIS 136 (Ct. Int'l Trade Nov. 22, 2010) .................... 12

*Shandong Rongxin Imp. & Exp. Co. v. United States*,
    163 F. Supp. 3d 1249 (Ct. Int'l Trade 2016) ................................. 18

*Shandong Rongxin Imp. & Exp. Co. v. United States*,
    203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) ............................... passim

*Skidmore v. Swift & Co*,
    323 U.S. 134 (1944) ..................................................... 22, 23

*Smith-Corona Group v. United States*,
    713 F.2d 1568 (Fed. Cir. 1983) ........................................... 24, 25

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
    580 U.S. 405 (2017) ......................................................... 20

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
    529 F.3d 1352 (Fed. Cir. 2008) ............................................. 13

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009) ......................................................... 18

*United States v. Zenith Radio Corp.*,
    562 F.2d 1209 (CCPA 1977), *aff'd*,
    437 U.S 443 (1978) ......................................................... 13

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
    435 U.S. 519 (1978) ......................................................... 30

*Xiping Opeck Food Co., Ltd. v. United States*,
    34 F. Supp. 3d 1331 (Ct. Int'l Trade 2014) ............................... 10

*Zenith Elecs. Corp. v. United States*,
    872 F. Supp. 992 (Ct. Int'l Trade 1994) ................................... 11

## STATUTES

5 U.S.C. § 706 ................................................................. 22

19 U.S.C. § 1516a(b)(1) ................................................... 9, 30

19 U.S.C. § 1673(2)(B) ........................................................................................ 30, 31

19 U.S.C. § 1675(a) .......................................................... 9, 11, 12, 15, 17, 20

19 U.S.C. § 1677(4)(A) ....................................................................................... 30, 31

19 U.S.C. § 1677(9)(C) ...................................................................................... passim

19 U.S.C. § 1677(33) ............................................................................................... 31

19 U.S.C. § 1677-2 .................................................................................................. 25

19 U.S.C. § 1677f-1(c)(2)(B) .................................................................................... 3

**REGULATIONS**

19 C.F.R. § 351.102(b)(17) ................................................................................... 10, 33

19 C.F.R. § 351.213 ........................................................................................... 9, 10, 16

19 C.F.R. § 351.214(b)(2) ......................................................................................... 12

**ADMINSTRATIVE DETERMINATIONS**

*Certain Cased Pencils From the People's Republic of China,*
    89 Fed. Reg. 74,894 (Dep't of Commerce Sept. 13, 2024) ..................... 33

*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam,*
    89 Fed. Reg. 18,595 (Dep't of Commerce Mar. 14, 2024) ........................... 2

*Xanthan Gum from the People's Republic of China,*
    89 Fed. Reg. 8.165 (Dep't of Commerce Feb. 6, 2024) ........................... 19

*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam,*
    88 Fed. Reg. 61,525 (Dep't of Commerce Sept. 7, 2023) ....................... 6

*Xanthan Gum From the People's Republic of China,*
    88 Fed. Reg. 51,286 (Aug. 3, 2023) ...................................................... 20

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
    87 Fed. Reg. 61,278 (Dep't of Commerce Oct. 11, 2022) ........................ 3

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity
To Request Administrative Review and Join Annual Inquiry Service List,*
    87 Fed. Reg. 47,187 (Dep't of Commerce Aug. 2, 2022) ........................ 2

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam,*

87 Fed. Reg. 15,912 (Dep't of Commerce Mar. 21, 2022)..................................................... 11, 28

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*,
86 Fed. Reg. 36,102 (Dep't of Commerce July 8, 2021)....................................................... 7, 27

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*,
85 Fed. Reg. 84,300 (Dep't of Commerce Dec. 28, 2020) ......................................................... 7

*Certain Activated Carbon from the People's Republic of China*,
79 Fed. Reg. 70,163 (Dep't of Commerce Nov. 25, 2014) ...................................................... 15

*Certain Activated Carbon from the People's Republic of China*,
78 Fed. Reg. 70,533 (Dep't of Commerce Nov. 26, 2013) ...................................................... 11

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*,
68 Fed. Reg. 47,909 (Dep't of Commerce Aug. 12, 2003) .................................................... 1, 3

H.R. REP. No. 98-725, at 22-23 (1984),
*as reprinted in* 1984 U.S.C.C.A.N. 5127, 5149...................................................................... 12

H.R. REP. No. 98-1156, at 181 (1984) (Conf. Rep.),
*as reprinted* in 1984 U.S.C.C.A.N. 5220, 5298...................................................................... 13

S. Rep. No. 96-249, 96th Cong., 1st Sess. 63 (1979),
reprinted in 1979 U.S.C.C.A.N. 381, 449) .............................................................................. 10

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

|  |  |  |
|---|---|---|
| LUSCIOUS SEAFOOD LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 24-00069 |
| | ) | Proprietary Information |
| UNITED STATES, | ) | Removed on Pages 4, 5, 28, 30-33 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NTSF SEAFOODS JOINT STOCK COMPANY, | ) | |
| BIEN DONG SEAFOOD COMPANY LTD, and | ) | |
| CATFISH FARMERS OF AMERICA, *et. al*., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment upon the agency record filed by plaintiff, Luscious Seafood LLC (Luscious), ECF No. 34.  Luscious challenges certain aspects of the United States Department of Commerce's (Commerce) final results in the eighteenth administrative review of the antidumping duty order covering certain frozen fish fillets from the Socialist Republic of Vietnam (Vietnam).  *See Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 68 Fed. Reg. 47,909 (Dep't of Commerce Aug. 12, 2003) (Order). As we explain below, Commerce's final results are supported by substantial evidence and are in accordance with law.

1

## STATEMENT PURSUANT TO RULE 56.2

I.     Administrative Determination Under Review

Luscious challenges the final results of the 2021-2022 antidumping duty administrative review of the order covering certain frozen fish fillets from Vietnam.  *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam*, 89 Fed. Reg. 18,595 (Dep't of Commerce Mar. 14, 2024) (final admin. review and partial recission) (Final Results), Appx1208-1211, and accompanying issues and decision memorandum (Dep't of Commerce Mar. 5, 2024) (IDM), Appx1175-1207.  The administrative review covers the period of review of August 1, 2021, through July 31, 2022.

II.     Issue Presented for Review

Whether Commerce's determination that Luscious was not a *bona fide* wholesaler of domestic like product during the period of review pursuant to 19 U.S.C. § 1677(9)(C), is in accordance with law and supported by substantial evidence.

## STATEMENT OF FACTS

I.     Request For Review And Commerce's Investigation Of Luscious's Standing

Since August 2003, Commerce has been administering the Order covering fish fillets from Vietnam.  *See Certain Frozen Fish Fillets From the Socialist Republic of Vietnam*, 68 Fed. Reg. 47,909 (Dep't of Commerce Aug. 12, 2003) (Order).  In August 2022, Commerce published a notice giving interested parties an opportunity to request an administrative review of the Order for the period of review.  *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 47,187 (Dep't of Commerce Aug. 2, 2022).

In response, Commerce received a number of review requests.  Among them was a request from Luscious, which identified itself as "a domestic U.S. wholesaler of the domestic like product."  Appx1000-1023.  Purporting to be a "domestic interested party" under 19 U.S.C. § 1677(9)(C), Luscious requested that Commerce review "all known Vietnamese producers and/or exporters."  Appx1000.  On October 11, 2022, Commerce initiated an administrative review with respect to 134 exporters.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 61,278, 61,281 (Dep't of Commerce Oct. 11, 2022), Appx1028-1039.  Commerce determined that it was not practicable to review every Vietnamese exporter of fish fillets named in the review, and selected respondents "accounting for the largest volume of subject merchandise that can be reasonably examined," consistent with 19 U.S.C. § 1677f-1(c)(2)(B).  Appx1028, Appx1128.

As part of its respondent selection process, Commerce evaluated the parties' arguments regarding the validity of the review requests, especially when it came to Luscious's review requests.  Specifically, the Vietnam Association of Seafood Exporters and Producers (VASEP) requested that Commerce "investigate and confirm" the standing of Luscious as a domestic wholesaler.  Appx12-12-1214.  Additionally, Bien Dong Seafood Co., Ltd (Bien Dong) and NTSF Seafoods Joint Stock Company (NTSF) requested that Commerce reject Luscious's application for access to the Administrative Protection Order because Luscious had not yet established itself as an interested party.  Appx1215-1216.

Subsequently, on October 14, 2022, Commerce issued questionnaires to two parties asserting standing as wholesalers of domestic like product—Luscious and QMC Foods, Inc.

(QMC)[1]—regarding their history and general operations, purchases and sales of domestic like products, and sales and purchases of subject merchandise.  Appx1025.  In Commerce's first questionnaire to Luscious, Commerce requested information regarding Luscious's history and general operations, domestic like product purchases, domestic like product sales, and subject merchandise purchases and sales.  Appx1025.  In its response, Appx80001-80051, Luscious explained that it was incorporated on [██████████████████████████████████████

██████████████████████████████] Appx80006; *see also* Appx1040-1062.

On November 18, 2022, the Catfish Farmers of America (CFA) and VASEP submitted deficiency comments regarding Luscious's questionnaire response.  Appx1216-1276.  After reviewing Luscious's questionnaire response and the deficiency comments, Commerce issued a second questionnaire to Luscious on December 13, 2022.  Appx1063, Appx80131-80134.  Specifically, Commerce asked for record evidence to support, among other things, Luscious's business locations, certain financial and tax statements, U.S. government-issued licenses, purchases of domestic like product, relationships among certain individuals involved in Luscious's business, and more.  Appx80131-80134.

In its January 3, 2023, supplemental questionnaire response, Luscious stated that it ████

████████████████████████████████████████████████████████████████

████████████████████████] Appx80140-80141.  Additionally, Luscious's bank statements came from a [████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[1] Like Luscious, QMC also requested a review of *all* known exporters of subject merchandise, but no party has challenged QMC's standing as a *bona fide* wholesaler before this Court or before Commerce.  Because no party challenges QMC's standing, we omit discussion about it.

████ ] Appx80144.  Luscious also did not prepare any [ ████████████████

████████████████████████████████████████████████████████

████████████████████████ ] Appx80140.  Nor did Luscious [ ████████

████████████████ ] *Id.*  Luscious [ ████████████████████████ ],

which was [ ████ ]  Appx80144-80145.

To understand Luscious's history of its business operations, Commerce asked for the

bank statements from each month beginning [ ████████████████████████

████████████████ ], and also asked for the deposit slips and checks, which

funded the purchases of domestic like product.  Appx80134.  Although the bank statements that

Luscious provided reflected the requested period, the screenshots did not state the *owner* of the

accounts.  Appx80144, Appx80161-80169.  Additionally, Luscious did not provide the requested

deposit slip copies, to identify the sources of those funds.  *Id.*  Finally, Luscious did not provide

all state filings and tax documents, as Commerce had requested.  Appx80140.

Luscious also reported various inconsistencies regarding its personnel in response to

Commerce's questions.  Specifically, Luscious identified [ ████████████████████

████████████████ ] Appx80141, yet one of its billing invoices includes ████████

████████████████ .] Appx80175.  Additionally, record evidence makes clear that

the phone number attached to Luscious's local business license belongs to ████████ .

Appx80235-80241.  As evidence of further inconsistencies in Luscious's reporting, Luscious

stated that it has [ ████████████████████████████████

████████████████████████████████████████ ].

Appx80142.  Luscious, however, reported that [ ████████████████████████

████████████████████████ ].  *Id.*

On January 12, 2023, CFA, Bien Dong, NTSF, VASEP, and QMC submitted factual information or comments rebutting or relating to Luscious's response to Commerce's second questionnaire.  Appx80201-80427.  All parties continued to challenge Luscious's standing to participate in the proceeding.

Because of the importance of evaluating the standing of parties early in the proceeding for the purposes of respondent selection and parties' ability to request an administrative review, Commerce released its determination with respect to Luscious's standing to request review on January 27, 2023.  Appx1096, Appx80177-80181.  Commerce determined that record evidence did not support a finding that during the period of review Luscious was a *bona fide* wholesaler of domestic like product within the meaning of 19 U.S.C. § 1677(9)(C).  *Id.*  Therefore, Commerce determined that Luscious's review request was void and determined to rescind the review of the companies exclusively requested for review by Luscious.[2]  Appx1100, Appx80181.

## II.   Preliminary Results

On August 31, 2023, Commerce issued its preliminary results.  *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam*, 88 Fed. Reg. 61,525 (Dep't of Commerce Sept. 7, 2023), Appx1153-1155, and accompanying Preliminary Decision Memorandum (PDM), Appx1128-1152.  Commerce made two relevant preliminary findings.  First, consistent with the

---

[2]  Commerce initially selected Bien Dong and Vinh Hoan Corporation as the mandatory respondents in this review.  Appx1130.  All parties withdrew their review requests for these companies except for Luscious.  Appx1133, Appx1151, Appx1155.  Based on its preliminary finding that there was no outstanding review request for Bien Dong, Commerce proceeded to select Can Tho Import-Export Seafood Joint Stock Company (CASEAMEX) as the replacement mandatory respondent.  Appx1130; *see also* Appx1154-1155 ("Commerce has preliminarily declined to find that one of the requestors had standing to request review during the period of review. If this determination is unchanged when Commerce issues its final results in this review, it will rescind this review with respect to all companies for which there are no remaining review requests.").

prior administrative reviews of the Order, Commerce found that QMC has standing to request a

review as a U.S.-based wholesaler of domestic like product under 19 U.S.C. § 1677(9)(C),

because QMC sells or arranges for the purchase or resale of goods as a wholesaler of domestic

like product.  Appx1132 (citing Appx80052-80130); *see also Certain Frozen Fish Fillets from*

*the Socialist Republic of Vietnam*, 85 Fed. Reg. 84,300 (Dep't of Commerce Dec. 28, 2020)

(prelim. admin. review, partial recission, and no shipment determ.) (Prelim. Results 2018-2019

AR), unchanged in *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 86 Fed.

Reg. 36,102 (Dep't of Commerce July 8, 2021) (final admin review and no shipments) (Final

Results 2018-2019 AR).  Second, consistent with its earlier standing determination, Commerce

found that record evidence did not support a finding that Luscious was a *bona fide* wholesaler of

domestic like product and preliminarily found that Luscious's review request was not valid.

Appx1133 (citing Appx1096-1100, Appx80177-80181).

III.    <u>Final Results</u>

      On March 5, 2024, Commerce issued its *Final Results.  See* Appx1208.  Among other

things, Commerce continued to find that Luscious did not qualify as a *bona fide* wholesaler of

domestic like product during the period of review, and thus, does not have standing to request an

administrative review as a domestic interested party.  Appx1181.  Specifically, Luscious's

limited history and timing of its establishment, the limited number of transactions during the

period of review, and the extent to which those limited transactions reflected a lack of

commercially reasonable and sustainable business activity, supported Commerce's determination

regarding Luscious's lack of *bona fide* wholesaling activity.  Appx1182.  Further, Luscious

failed to provide certain information, requested by Commerce, such as various banking and

business documents, which were relevant to Commerce's analysis.  *Id.*  There were also various

inconsistencies in Luscious's reporting with respect to the company's initial activity and personnel that lend further support to Commerce's finding. *Id.*

## SUMMARY OF ARGUMENT

Substantial evidence supports Commerce's determination that the details surrounding Luscious's wholesaling operations, when taken as a whole, warrant a finding that record evidence does not support Luscious's claim that it was a *bona fide* wholesaler of domestic like product during the period of review, meaning Luscious did not have standing to request an administrative review of the Order. Thus, Commerce determined that Luscious's review request was not valid and rescinded its review of all of the exporters for which review Luscious had solely requested. Luscious's arguments on this issue amount to asking this Court to re-weigh the evidence, which the Court cannot do.

Luscious argues that Commerce's analytical factors for analyzing wholesaler standing are not required by the statute. However, Commerce's interpretation of the term "wholesaler" to require *bona fide* wholesaling operations is consistent with the statute and Commerce's practice. The Federal Circuit has also affirmed Commerce's interpretation of ambiguous statutory terms, such as "wholesaler," in the antidumping duty law. Commerce's rescission of its review of those companies when Luscious was the sole requester is therefore proper.

## ARGUMENT

I.    Legal Standards

A.    Standard Of Review

"{T}he Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034,

1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).  Substantial evidence is "more

than a mere scintilla" of relevant evidence.  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938).  But it is only "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion, taking into account the entire record, including whatever fairly detracts

from the substantiality of the evidence."  *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562

(Fed. Cir. 1984) (cleaned up). "{T}his is something less than the weight of the evidence."

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted). "{T}he possibility

of drawing two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence."  *Id*.  Rather, when Congress has

entrusted an agency to administer a statute that demands inherently fact intensive inquiries—as

in this administrative review—Commerce's conclusions may be set aside only if the record

contains evidence "so compelling that no reasonable factfinder" could reach the same

conclusion.  *See INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).  Thus, "the Court will not

disturb an agency determination if its factual findings are reasonable and supported by the record

as a whole, even if there is some evidence that detracts from the agency's conclusion."

*Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718 (Ct. Int'l Trade 2001).

    B.    Applicable Law And Regulations

    Pursuant to 19 U.S.C. § 1675(a)(1), Commerce commences an administrative review of a

company for which review is requested only if it receives a request from an interested party (or if

Commerce decides to do so based on its own initiative).  Relevant to this case, only two types of

interested parties may request Commerce to undertake an administrative review of an

antidumping duty order.  Pursuant to 19 C.F.R. § 351.213, either a "domestic interested party"

may request that Commerce review "specified individual {foreign} exporters or producers

covered by an order," or a foreign "exporter or producer covered by an order" may request review of itself. The regulation does not authorize a foreign entity to request that Commerce review another foreign exporter or producer.

A core question in this case involves the proper scope of the term "domestic interested party" as referenced in 19 C.F.R. § 351.213(b)(1), which confers standing before Commerce to initiate a review against a specified foreign exporter. In relevant part, a "domestic interested party" is defined as "a manufacturer, producer, or wholesaler in the United States of domestic like product." 19 U.S.C. § 1677(9)(C); *see also* 19 C.F.R. § 351.102(b)(17). Although the standing requirement for requesting reviews by Commerce, defined in sections 1675(a)(1) and 1677(9), are "intended to be construed liberally," *Shandong Rongxin Imp. & Exp. Co. v. United States*, 203 F. Supp. 3d 1327, 1340 (Ct. Int'l Trade 2017) (*Shandong Rongxin II*), the legislative history of the domestic interested party provision states that "standing requirements should be administered to provide an opportunity for relief for an adversely affected industry and to prohibit petitions filed by persons with no stake in the result of the investigation." *Brother Indus. (USA), Inc. v. United States*, 801 F. Supp. 751, 757 (Ct. Int'l Trade 1992) (quoting S. Rep. No. 96-249, 96th Cong., 1st Sess. 63 (1979), reprinted in 1979 U.S.C.C.A.N. 381, 449) (cleaned up).

Because the terms "manufacturer, producer, or wholesaler," and other forms of interested parties, are not defined by the statute, Commerce has developed a practice to interpret various provisions of this statute. *Pokarna Engineered Stone Ltd. v. United States*, 56 F.4th 1345, 1349 (Fed. Cir. 2023); *see also Xiping Opeck Food Co., Ltd. v. United States*, 34 F. Supp. 3d 1331, 1342 (Ct. Int'l Trade 2014). For example, because the statute does not define the term "producer," Commerce conducts a factual analysis to determine whether a company performs

sufficient production-related activities such that it is a "producer."  *Shandong Rongxin II*, 203 F.

Supp. 3d at 1338-43 (holding that record evidence of work orders and production processes

provide substantial evidence supporting a finding that company was a "producer" of domestic

like product); *Zenith Elecs. Corp. v. United States*, 872 F. Supp. 992, 994 (Ct. Int'l Trade 1994)

(Commerce found domestic interested party to have standing as a "producer" with support of an

affidavit from its vice president and general counsel stating that at least some production would

remain in the United States, upon a showing of rebuttal evidence from respondent that some

production was being moved to Mexico).

Applicable to this case, Commerce's practice when determining the standing of

wholesalers is to conduct a similar factual analysis by issuing questionnaires to analyze a

particular wholesaler's *bona fide* wholesaling operations by analyzing the wholesaler's history

and general operations, domestic like product purchases and sales, and subject merchandise

purchases and sales.  *See* Final Results 2018-2019 AR IDM at 9-13; *Certain Frozen Fish Fillets*

*from the Socialist Republic of Vietnam*, 87 Fed. Reg. 15,912 (Dep't of Commerce March 21,

2022) (final admin. results) (Final Results 2019-2020 AR), and accompanying IDM at Comment

1; *see also Certain Activated Carbon from the People's Republic of China*, 78 Fed. Reg. 70,533

(Dep't of Commerce Nov. 26, 2013) (final admin. review), and accompanying IDM at 9

(analyzing a "wholesaler's activities and business practices").  Because the statute does not

specify how to conduct this analysis, nor does it require a minimum level of commercial activity

required to qualify as a domestic interested party, Commerce explained in the final results that it

borrows from the statute's instructive, yet not exclusive, framework to analyze the *bona fide*

nature of transactions in other contexts, specifically when Commerce conducts a new shipper

review under 19 U.S.C. § 1675(a)(2)(B)(i).  Appx1182.  Under this framework, the statute

provides new exporters or producers that have never been individually examined or reviewed by Commerce the opportunity to establish that they are entitled to an individual rate under an existing order. *Shandong Chenhe Int'l Trading Co., Ltd. v. United States*, No. 08-00373, 2010 Ct. Intl. Trade LEXIS 136, at* 6 (Ct. Int'l Trade Nov. 22, 2010). Commerce's practice during these new shipper reviews is to determine whether the new exporters and producers have conducted *bona fide* or commercially reasonable transactions. *Id.* (citing 19 C.F.R. § 351.214(b)(2)); *see also Hebei New Donghua Amino Acid, Co., Ltd. v. United States*, 374 F. Supp. 2d 1333, 1338 (Ct. Int'l Trade 2005). Commerce normally examines a totality of the circumstances to determine whether the transaction is "commercially reasonable" or "atypical of normal business practices." *Hebei*, 374 F. Supp. 2d at 1339 (quotation omitted). In doing so, Commerce looks at various statutorily required factors to determine the *bona fide* nature of sales. *See* 19 U.S.C. § 1675(a)(2)(B)(iv). Although no single factor is dispositive, Commerce has found this framework to be instructive as part of its analysis to determine whether a wholesaler sufficiently conducts "commercially reasonable" transactions and has a "stake in the result of the investigation." Appx1182; *see also Shandong Rongxin II*, 203 F. Supp. 3d at 1340.

Another principle fundamental to Commerce's threshold analysis before initiating an administrative review, is Commerce's prerogative to protect the integrity of its proceedings. In 1984, Congress specifically amended 19 U.S.C. § 1675(a), allowing Commerce to bypass annual reviews when none is requested, because the prior statutory regime, requiring Commerce to include all exporters in every review, posed a "heavy burden on {Commerce's} limited staff resources." H.R. REP. No. 98-725, at 22-23 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 5127, 5149. The aim of the amendment was "to reduce the administrative burden on {Commerce} of automatically reviewing every outstanding order even though circumstances do not warrant

12

it{.}" *Id.*; *see also* H.R. REP. No. 98-1156, at 181 (1984) (Conf. Rep.), *as reprinted in* 1984 U.S.C.C.A.N. 5220, 5298.

Given the underlying purpose of Congress's amendment to the statute, allowing Commerce to rescind reviews when no valid pending review request meets Congress's overarching statutory goal of alleviating Commerce's burden in administering its reviews. Commerce's analysis in determining whether an alleged interested party has a "stake" in the result of the administrative review is consistent with Congressional intent to not conduct an administrative review "when the circumstances do not warrant it" and is also consistent with Commerce's inherent authority to protect its proceedings.

For example, the Federal Circuit has explained that the authority for Commerce to protect its own proceedings is "inherent" and not dependent on any "explicit statutory authority{.}" *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360-61 (Fed. Cir. 2008) (citations omitted).  The Federal Circuit has also held that Commerce's inherent authority to defend its proceedings applies to the "first instance while they are ongoing."  *N.M. Garlic Growers Coal. v. United States*, 953 F.3d 1358, 1371 (Fed. Cir. 2020).  Furthermore, the Federal Circuit recently held that "general language" used in a provision of the antidumping statute commits certain decisions to Commerce's discretion to determine whether particular facts satisfy the statute as an implied delegation of adjudicative authority.  *Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1260-61 (Fed. Cir. 2024) (stating that Congressional use of the term "substantially dependent" gives Commerce "considerable discretion" in determining whether particular facts meet that standard (citing *United States v. Zenith Radio Corp.*, 562 F.2d 1209, 1216 (CCPA 1977), *aff'd*, 437 U.S 443 (1978) ("The court held that Congress's use of the terms 'bounty' and 'grant,' which were 'broad but not

ambiguous,' demonstrated Congress' intent to provide a wide latitude, within which the

Secretary of the Treasury . . . may determine the existence or non-existence of a bounty or a

grant, is clear from the statute itself, and from the congressional refusal to define the words

'bounty,' {or} 'grant' . . . .")).

Although the Supreme Court has held that "{c}ourts must exercise their independent

judgment in deciding whether an agency has acted within its statutory authority," *Loper Bright*

*Enterprises. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024), an interpretation of the word

"wholesaler," without any other statutory or regulatory guidance, squarely fits within Congress's

implied delegation of adjudicative authority to determine how the facts at issue square with a

"broad but not ambiguous" term in the antidumping law. *Zenith Radio Corp.*, 562 F.2d at 1216.

II.    Commerce's Determination That Luscious Did Not Have Standing To Request A Review
       As A *Bona Fide* Wholesaler Is Supported By Substantial Evidence And In Accordance
       With Law

As part of its *Final Results*, Commerce partially rescinded the review of certain

companies because Commerce had determined that Luscious did not have standing to request

review of those companies.  Specifically, Commerce found Luscious's review request of certain

Vietnamese exporters of fish fillets to be void and rescinded review of those companies for

which Luscious was the sole requestor.  Appx1133.  Luscious essentially challenges

Commerce's finding on two grounds — one based in law and the other in fact.  Luscious first

contends that Commerce unlawfully considered certain factors in analyzing its status as a

domestic interested party.  Luscious Br. at 10-12, 23-24.  Second, Luscious disagrees with

Commerce's interpretation of record evidence, arguing that Commerce's stated reasons for not

accepting Luscious's review request are not supported by substantial evidence.  *Id.* at 22-23.

Neither argument is persuasive, as we explain below.

A.    Luscious Fails To Show That Commerce's Standing Determination Is Contrary
To Law

First, Luscious argues that Commerce's interpretation of 19 U.S.C. § 1677(9)(C) relied

upon unenumerated statutory factors.  Luscious Br. at 10-12.  Luscious also argues that the *Loper*

*Bright* decision "provides further grounds for rejecting Commerce's over-reach in interpreting

the statute and applying it to Luscious." *Id.* at 23-24.  These arguments are meritless, as we

explain below.

1.    Commerce Lawfully Interpreted 19 U.S.C. § 1677(9)(C)

Generally, Luscious disagrees with Commerce's interpretation of 19 U.S.C. § 1677(9)(C)

for domestic interested parties. *Id.* at 10-12.  First, Luscious states that an analysis of "*bona fide*

wholesaling operations" is not considered by the statute. *Id.* at 10.  Second, Luscious contends

that the statutory factors enumerated for new shipper review under 19 U.S.C. § 1675(a)(2)(B)(iv)

cannot be used for determining the standing of wholesalers. *Id.*  Luscious, however, fails to

show that Commerce's determination is unlawful.

The term "wholesaler" is not defined by the statute. *Pokarna*, 56 F.4th at 1349.  The

statute is also silent as to any minimum level of commercial activity required to qualify as an

interested party, and Commerce's practice is to not enforce such a threshold. *Certain Activated*

*Carbon from the People's Republic of China*, 79 Fed. Reg. 70,163 (Dep't of Commerce Nov. 25,

2014) (final admin. review) (*Activated Carbon* Final Results 2012-2013), and accompanying

IDM at Comment 1.  Commerce, however, does interpret the term "wholesaler" to require "*bona*

*fide* wholesaling operations" to qualify as an interested party. *Id.*  Thus, to determine whether an

alleged wholesaler seeking to request an administrative review has *bona fide* wholesaling

operations, Commerce has developed a practice of sending questionnaires to further analyze the

extent of their business activity with no factor being dispositive.  Final Results 2018-2019 AR

15

IDM at 9-10 n.50 (noting that Commerce sent and received two questionnaire responses each from both Colorado Boxed Beef Company and QMC Foods, Inc.).

As Commerce explained in the final results, pursuant to 19 C.F.R. § 351.213(b)(1), wholesalers–as domestic interested parties–can request a review of *any* producer or exporter. Appx1181.  Due to this broad ability to request reviews, Commerce explained the importance of examining a domestic interested party's business activities early in the proceeding, before granting a company standing to participate in its proceedings.  Appx1183.  Based on the inherent authority of Commerce to protect the integrity of its proceedings, Commerce emphasizes the importance of examining the business activities of companies that have never participated in the proceeding before Commerce.  *Id.* (citing *N. M. Garlic Growers Coal.*, 953 F.3d at 1371).  Thus, not only was it reasonable for Commerce to analyze a company's *bona fide* wholesaling operations, but to analyzing whether a company has such operations before granting it standing to participate before the agency, either as a wholesaler or any other variety of interested party, is consistent with Commerce's practice.  *See id.*

Luscious, however, confuses the standard that Commerce applied.  Luscious Br. at 10-12. Luscious argues that "wholesalers are not required to meet the same *bona fide* sales analysis criteria that Commerce examines in other administrative contexts - for example, as part of new shipper reviews."  *Id.*  Luscious also argues that neither the statute nor regulations require a "*bona fide* analysis" for the purpose of analyzing wholesaler standing.  *Id.* at 10.  To the contrary, neither the statute nor regulations *foreclose* Commerce's analysis and statutory interpretation.  Luscious does not address, however, the true analysis underlying Commerce's statutory interpretation:  that a *wholesaler* must conduct *bona fide wholesaling operations*.

In the absence of a clear statutory or regulatory definition to determine whether a company undertakes *bona fide* wholesaling operations and commercial activities, Commerce explained in the final results that it found the factors enumerated in 19 U.S.C. § 1675(a)(2)(B) for new shipper reviews to be instructive. Appx1182 n.20. As previously explained, new shipper reviews provide a framework by which Commerce determines whether new producers or exporters not previously reviewed or investigated are entitled to their own rate. *Shandong Chenhe*, 2010 Ct. Intl. Trade LEXIS 136, at* 6. In new shipper reviews, as in this case, participating companies often have a limited number of transactions, and Commerce must assess whether their business dealings are likely to be indicative of future commercial behavior. Appx1182. As Luscious admits, this review was the first time that Luscious had requested review as a wholesaler, and it had limited and still-developing business operations and a small number of transactions. Luscious Br. at 10. Thus, Commerce reasonably relied on a statutory framework that is directly instructive for analyzing such companies seeking to participate in and be subject to Commerce's proceedings for the first time. Appx1182.

In contrast, Luscious's preferred interpretation of the statute requires Commerce to blindly accept its assertion that Luscious satisfies the statutory requirements as a wholesaler and to disregard contradictory record evidence. *Cf. Minebea Co. v. United States*, 984 F.2d 1178, 1182 (Fed. Cir. 1993) (When evaluating standing for industry support for a petition, "the ITA, as the agency responsible for assessing standing under the antidumping laws, may determine what information it should use in order to carry out its statutory duty."). But every type of interested party enumerated in 19 U.S.C. § 1677(9) that seeks to participate in a proceeding before Commerce requires *some* degree of factual analysis by Commerce to confirm that they are, in fact, an interested party within the meaning of the statute. Luscious's argument would lead to

absurd and arbitrary results, subjecting certain interested parties to more scrutiny than others. *See United States v. Eurodif S.A.*, 555 U.S. 305, 322 (2009) (affirming Commerce's statutory interpretation that avoids absurd results as reasonable).

Moreover, Congress cannot have intended that any company claiming "interested party" status must be allowed to participate as an interested party without any consideration as to whether the company is, in fact, an interested party as required by the statute. Requiring a company claiming to be a wholesaler of the domestic like product to provide factual information to support its claim is reasonable. And making factual findings based upon the information provided is necessary for Commerce to carry out its statutory duty. The methodology for acquiring the facts, including determining what factual information is pertinent, and the weight given to the facts found are well within Commerce's discretion and adjudicative responsibilities.

Luscious cites *Shandong Rongxin II* to support its argument that a "*bona fide* sales analysis" is not required by statute for wholesalers, and that the burden of producing evidence to rebut standing falls to the party challenging it. Luscious Br. at 10-12. Putting aside the wide swathe of record evidence submitted by numerous interested parties in this proceeding to rebut Luscious's assertion of wholesaler standing, Appx1179-1181, Appx80201-80427, including its own data, the facts underlying *Shandong Rongxin* do not support Luscious's argument. First, in *Shandong Rongxin I*, this Court held that Commerce failed to address contradictory evidence regarding the requester's standing, and thus, Commerce *could not presume standing*. *Shandong Rongxin Imp. & Exp. Co. v. United States*, 163 F. Supp. 3d 1249, 1254 (Ct. Int'l Trade 2016) (*Shandong Rongxin I*). The Court accordingly remanded Commerce's standing determination for further explanation or reconsideration, for failing to consider certain contradictory evidence regarding the standing determination at issue. *Id.*

18

Second, the facts surrounding the business operations and historical participation in Commerce's proceedings, between Luscious and Dixon Ticonderoga Company (Dixon)--the domestic party and requestor at issue in the *Shandong Rongxin* line of cases–are easily distinguished.  During the underlying review in *Shandong Rongxin*, Dixon had requested a review of Shandong in 2013.  *Id.* at 1251.  Although there was record evidence that Dixon's affiliated Chinese exporter, Beijing Fila Dixon Stationary Company, Ltd., produced Dixon's pencils in China, Dixon had participated in the proceeding as the petitioner, requested the antidumping duty order in November 1992 on certain cased pencils from China, and had participated in subsequent sunset and administrative reviews.  *Id.* at 1254.  Even after this history of participation in Commerce's proceedings, Commerce re-opened the record on remand and issued two supplemental questionnaires to supplement the record regarding its findings supporting Dixon's standing as a domestic interested party.  *Shandong Rongxin II*, 203 F. Supp. 3d at 1335.  The Court sustained Commerce's finding, as supported by substantial evidence, that Dixon's questionnaire responses demonstrated a continuous run of pencil production during the period of review, at its facility in Macon, Georgia, such that Dixon was a producer and domestic interested party, within the meaning of 19 U.S.C. § 1677(9).  *Shandong Rongxin II*, 203 F. Supp. 3d at 1344.  Simply put, contrary to Luscious's claim, *Shandong Rongxin II* does not foreclose a factual analysis by Commerce of a party's *bona fide* business operations and history with Commerce's proceedings before Commerce may find that a party qualifies as a domestic interested party.  Applying a similar test to Luscious, in contrast to Dixon's decades of history in the proceedings before Commerce, Luscious has never previously participated in this proceeding.  Luscious Br. at 10; *see also* Appx1181-1184.  Any discussion by Luscious of detracting evidence, discussed in more detail below, would require this Court to reweigh

19

evidence, which it cannot do.  *Shandong Rongxin II*, 203 F. Supp. 3d at 1336; *see also Downhole Pipe & Equip., L.P. v. United State*s, 776 F.3d 1369, 1377 (Fed. Cir. 2015).

Luscious's cite to Commerce's determination in *Xanthan Gum from China* is similarly unavailing.  Luscious Br. at 11-12 (citing *Xanthan Gum from the People's Republic of China*, 89 Fed. Reg. 8.165 (Dep't of Commerce Feb. 6, 2024) (final admin. review), and accompanying IDM at Comment 6).  In *Xanthan Gum from China*, Commerce stated that a wholesaler is not required to "meet the same *bona fide* sales analysis criteria that Commerce examines as part of new shipper reviews."  *Id.* (citing *Shandong Rongxin II*, 203 F. Supp. 3d at 1340-45).  Indeed, as stated in *Xanthan Gum from China*, 19 U.S.C. § 1675(a)(2)(B)(i) *requires* Commerce to consider certain criteria when conducting new shipper reviews, but it does not *foreclose* the use of these factors when analyzing similar factual scenarios for wholesaler standing.  *See Xanthan Gum from China* IDM at Comment 6.  When interpreting the statute covering reviews of companies seeking to participate in Commerce's proceedings for the first instance, Commerce must look beyond 19 U.S.C. § 1677(9)(C), when there is no definition of a "wholesaler."  *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (citing *Maracich v. Spears*, 570 U. S. 48, 65 (2013) ("It is necessary and required that an interpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning.").

Although Commerce stated in *Xanthan Gum from China* that it was not required to analyze the factors in 19 U.S.C. § 1675(a)(2)(B) to analyze wholesaler standing, it did not foreclose, and it ultimately relied on factors similar to those in § 1675(a)(2)(B).  Specifically, in *Xanthan Gum from China*, Commerce analyzed the timing and number of the claimed wholesaler's sales, supporting documentation of its purchases and sales of domestic like product,

and supporting business licenses before Commerce found the "{wholesaler's} purchases and

sales of the domestic like product to be legitimate business transactions." *Xanthan Gum from

China* IDM at Comment 6; *see also Xanthan Gum From the People's Republic of China*, 88 Fed.

Reg. 51,286 (Aug. 3, 2023) (prelim. admin. review), and accompanying PDM at 4-6.  Many of

these factors are the same factors that Commerce applied to Luscious and parallel those

described in 19 U.S.C. § 1675(a)(2)(B).  *See* Appx1182.  Nonetheless, after considering similar

factors, Commerce reached an opposite conclusion about Luscious, by analyzing the "extent to

which {its} limited transactions reflected a commercially reasonable and sustainable business

activity," and determined that "the record does not support Luscious Seafoods' claim that it was

a *bona fide* wholesaler of domestic like product during the {period of review}."  *Id.* (citing

Appx80180); *see also* Appx1132-1133 (explaining that the record supported a finding that QMC

was a U.S.-based wholesaler of domestic like product because its business practices reflect

characteristics of wholesalers with ongoing *bona fide* operations and that it sells or arranges for

the purchase or resale of goods as a wholesaler of domestic like product).

        To the extent that Luscious argues that Commerce should have granted it standing

because the agency granted a different wholesaler standing in a different proceeding, Luscious

Br. at 14-17, the Court should reject this argument.  "{E}ach administrative review is a separate

exercise of Commerce's authority that allows for different conclusions based on different facts in

the record." *Jiaxing Brother Fastener Co. v. United States*, 822 F.3d 1289*, * 1299 (Fed. Cir.

2016) (citing *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir.

2014)).  Thus, not only has Commerce adequately explained its approach toward analyzing

Luscious's wholesaling activity, but its explanation is consistent with its practice, the statute, and

Congressional intent to ensure that parties have an "adequate stake in the result of the investigation." *Shandong Rongxin II*, 203 F. Supp. 3d at 1336.

      2.      Commerce's Interpretation Of 19 U.S.C. § 1677(9)(C) Is Consistent With Supreme Court And Federal Circuit Precedent

Referencing *Loper Bright*, Luscious argues that courts are now not to defer to an agency's interpretation of a statute, and "{n}othing in the statute relating to an interested parties' {*sic*} eligibility to request an administrative review supported an interpretation other than that Luscious was a legitimate entity engaged in wholesale trade of domestic catfish and other products during the underlying period of review." Luscious Br. at 23-24. Luscious misconstrues *Loper Bright* and fails to acknowledge the precedent that confirm Commerce's discretion in administration of the highly specialized antidumping and countervailing duty laws.

*Loper Bright* construed the Administrative Procedure Act, 5 U.S.C. § 706, and overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, courts employed a two-step framework for an agency's interpretation of statutes that Congress had entrusted the agency to administer. Under step one, a court discerned whether Congress had directly spoken to the precise question at issue, and if congressional intent was clear, that ended the inquiry. *Loper Bright*, 144 S. Ct. at 2254. Under step two, if a court determined that the statute was silent or ambiguous with respect to the specific issue at hand, the court deferred to the agency's interpretation if it was based on a permissible construction of the statute. *Id*. The courts thus deferred to reasonable agency interpretations of statutory ambiguities or "gap-filling." *Chevron*, 467 U.S. at 844.

In *Loper Bright*, the Court held that "{c}ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 144 S. Ct. at 2273. Although it overruled step two of the *Chevron* framework, the Court held that "courts may—as

they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes." *Id.* at 2262. "Such interpretations 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the {Administrative Procedures Act}." *Id*. (quoting *Skidmore v. Swift & Co*, 323 U.S. 134 (1944)). Further, when a statutory ambiguity implicates a technical matter, the Court observed that an agency's "body of experience and informed judgment" should not be ignored; rather, "{a}lthough an agency's interpretation of a statute 'cannot bind a court,' it may be especially informative 'to the extent it rests on factual premises within {the agency's} expertise.'" *Id*. at 2267 (quoting *Skidmore*, 323 U.S. at 140). Thus, *Loper Bright* confirms that courts may still be informed by an agency's interpretation and experience with statutes that Congress entrusted the agency to administer. *See id.*

The Court also recognized instances when a statute either expressly or impliedly authorizes an agency to exercise discretion and flexibility:

> the statute's meaning may well be that the agency is authorized to exercise a degree of discretion. Congress has often enacted such statutes. For example, some statutes expressly delegate{} to an agency the authority to give meaning to a particular statutory term. Others empower an agency to prescribe rules to fill up the details of a statutory scheme, or to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as appropriate or reasonable.

*Id.* at 2263 (cleaned up). In such instances, reviewing courts "independently interpret the statute and effectuate the will of Congress subject to constitutional limits" "by recognizing constitutional delegations, fix{ing} the boundaries of {the} delegated authority, and ensuring the agency has engaged in reasonable decision making within those boundaries." *Id*. (cleaned up). The Court also held that cases relying on *Chevron* remain good law, and "are still subject to statutory *stare decisis* despite our change in interpretive methodology." *Id.* at 2273 (citing

23

*CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 456 (2008); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014); *Dickerson v. United States*, 530 U.S. 428, 443 (2000)). Therefore, precedent sustaining Commerce's interpretation of the antidumping and countervailing duty statutes remains in effect under the principle of *stare decisis* even if the Court had reached its decision under step two of the *Chevron* analysis. *See id.*

      Additionally, the Federal Circuit has long recognized that Commerce's determinations in antidumping and countervailing duty matters are entitled to deference distinct from *Chevron*, due to the complex and technical nature of the antidumping and countervailing duty statutes. *See Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*, 5 F.4th 1367, 1374-75 (Fed. Cir. 2021) (recognizing "deference {that} is both greater than and distinct from that accorded the agency in interpreting the statutes it administers, because it is based on Commerce's technical expertise"); *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("Commerce's special expertise makes it the 'master' of the anti-dumping law, entitling its decisions to great deference"); *Smith-Corona Group v. United States*, 713 F.2d 1568, 1582 (Fed. Cir. 1983) (holding that "review of the statute reveals tremendous deference to the expertise of {} Commerce in administering the antidumping law"). Indeed, the broad discretion that Commerce enjoys in its implementation of antidumping and countervailing duty legislation flows from the "intricate framework" established by the statute and Congress's inability to anticipate in legislation every possible intricacy. *See Smith-Corona Group*, 713 F.2d at 1571 (decided a year prior to *Chevron*); *see also Melamine Chemicals, Inc. v. United States*, 732 F.2d 924, 930 (Fed. Cir. 1984) (holding that Commerce has broad discretion when filling statutory gaps because there is no "prescient Congress . . . devoting a majority of its effort to writing statutes on the daily management of our international trade

24

relations, including much of what may be considered administrivia."). "The number of factors involved, complicated by the difficulty in quantification of these factors and the foreign policy repercussions of a dumping determination, makes the enforcement of the antidumping law a difficult and supremely delicate endeavor." *Smith-Corona Group*, 713 F.2d at 1571. Thus, although the statute imposes certain "general standards" that must be followed, within the statutory framework, Commerce "has been entrusted with responsibility for implementing the antidumping law {and t}he Secretary has broad discretion in executing the law." *Id*. Accordingly, the Court should evaluate whether Commerce engaged in "reasoned decision making" within the boundaries of its delegated authority. *See Loper Bright*, 144 S. Ct. at 2263. For reasons discussed throughout this brief, Commerce satisfied that standard by evaluating the particular facts and circumstances of this case and reasonably concluding that Luscious was not a *bona fide* wholesaler under 19 U.S.C. § 1677(9)(C).

Moreover, the Supreme Court recognized in *Loper Bright* that deference may also be owed to "factbound determinations" when "application of a statutory term was sufficiently intertwined with the agency's factfinding." *Loper Bright*, 144 S. Ct. at 2259-60. Commerce's interpretation of 19 U.S.C. § 1677(9)(C) as applied to the facts of this administrative review is inarguably a "factbound determination." For example, the Federal Circuit recently considered in *Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1256 (Fed. Cir. 2024), whether the market for raw olives was "substantially dependent" on the market for table olives, as required by 19 U.S.C. § 1677-2. The court regarded the term "substantially dependent" as general but not ambiguous and held that the case was "more properly viewed as one involving implied delegation of adjudicative authority to the agency

rather than deference to the agency's interpretation of an ambiguous statute." *Id*. at 1261. The

court further held that,

> Congress's use of the term "substantially dependent" in section
> 1677-2 gives Commerce considerable discretion in determining
> whether particular facts meet that standard.  Congress's use of
> more general language indicates its understanding that assessing
> dependence, for purposes of section 1677-2, is a holistic
> determination.  It further shows that Congress delegated the task of
> making that determination to Commerce, based on the
> circumstances of each case.

*Id*. at 1260.

An interpretation of the word "wholesaler" untethered from the facts of any individual

record, such as that proposed by Luscious, *see* Luscious Br. at 11-12, could lead to absurd results

that are contrary to the intention of Congress.  Such an outcome undergirds the logic for

affording Commerce deference in interpreting "general" statutory terms in these "factbound

determinations" like "wholesaler."  *See Loper Bright*, 144 S. Ct. at 2259-60.  Here, Commerce

reasonably looked to the substance of Luscious's wholesaling operations, consistent with its

prior practice, to determine whether Luscious was a "wholesaler" within the meaning of the

statute and determined that Luscious did not meet that standard.  *See* Appx1181-1183.

Accordingly, the Court should sustain Commerce's standing determination as in accordance with

law.

C.    Substantial Evidence Supports Commerce's Wholesaler Standing Analysis

Luscious's brief is replete with requests to this Court to reweigh evidence, Luscious Br.

at 12-22, which is contrary to the substantial evidence standard of review.  *See JMC Steel Corp.*

*v. United States*, 24 F. Supp. 3d 1290, 1313 (Ct. Int'l Trade 2014) ("it is not the Court's place to

re-weigh the evidence or to suggest that another alternative was the only appropriate choice").

The Court should reject Luscious's various meritless arguments, as explained below.

First, the Court should reject Luscious's argument that Commerce unfairly subjected it to a "high hurdle," not considered by the agency in other proceedings. *See* Luscious Br. at 14-16. Luscious cites *Xanthan Gum from China* to support its argument that a wholesaler can have standing before Commerce by merely providing evidence that a company purchased domestic like product from a domestic manufacturer and sold it to a domestic purchaser, even if the wholesaler made only one sale outside of the period of review and its submissions have "discrepancies." Luscious Br. at 14-16. Luscious also argues that by analyzing Luscious's business history, sources of funding, profitability, and number of transactions with "affiliated" parties, that Commerce arbitrarily imposed a "domestic activity" and "domestic origin" test on Luscious. *See id.* These arguments are meritless.

From the outset, Luscious confuses Commerce's statements regarding its practice to *not* enforce a "minimum level of commercial activity," "domestic activity," and "domestic origin" thresholds. *See id.* at 17. Specifically, Commerce has stated that the company seeking standing must engage in wholesaling and commercially sustainable activity, and that Commerce does not enforce requirements regarding the *volume* or *source* of such wholesaled merchandise (beyond the statute's minimum requirement that "domestic like product" be sourced from within the United States). *See Xanthan Gum from China* IDM at 40; *see also* Final Results 2019-2020 AR IDM. In other words, Commerce has explained that a minimal number of sales, the relative quantity of domestic like product sales as compared with sales of imported subject merchandise, and the relative volume of wholesaling of domestic like product compared to overall business operations, are not dispositive of the wholesaler standing question. *See* Appx1182; *see also Activated Carbon* 2012-2013 at 33. Indeed, as we described above, analyzing whether a company is a "wholesaler" within the meaning of 19 U.S.C. § 1677(9)(C) requires an analysis of

*wholesaling activity*.  In the absence of a statutory or regulatory definition of wholesaler, it is unreasonable for Luscious to seek to impose limitations on the factors necessary to analyze a company's *bona fide* wholesaling activity, especially when Commerce has consistently conducted this analysis in other segments of this order.  *See* Final Results 2018-2019 AR IDM at Comment 1 ("Both CBBC and QMC have submitted sufficient evidence of the *bona fide* nature of their sales of domestic like product."); Final Results 2019-2020 AR IDM at Comment 1 ("As an initial matter, and as noted above, Commerce solicited information regarding the *bona fide* nature of CBBC's wholesaling transactions."); *see also Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48-49 (1983) (explaining that "an agency must cogently explain why it has exercised its discretion in a given manner").

As Commerce explained in the final results, although none of these factors were dispositive, the ███████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████ ] do not support Luscious's claim that it was a *bona fide* wholesaler of domestic like product.  Appx80179-80180.  Commerce also explained the importance of analyzing Luscious's [████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████ ] Appx80180.  Even if the Court were to accept Luscious's arguments, that Commerce analyzed different factors for parties asserting wholesaler standing in different proceedings, Commerce's action can only be considered arbitrary if its explanation is inadequate or unreasonable.  *See Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003) ("If Commerce acted differently than it has consistently acted in similar circumstances without reasonable explanation, then Commerce's

actions are arbitrary.").  Here, Commerce reasonably explained its rationale at length –

requesting the same information from *all* parties seeking standing as a wholesaler, in line with

the same practice that has been applied in multiple prior reviews under the Order.  *See*

Appx1181-1184; *see also* Appx80179-80181.  Luscious merely disagrees with Commerce's

explanation and seeks for this Court to reweigh evidence or otherwise have Commerce disregard

record evidence regarding Luscious's sales and operations, which the Court should decline to do.

*See Downhole Pipe*, 776 F.3d at 1377.

 Luscious further argues that Commerce should not have considered [██████████

████████████████████████████████████████████████████████

██████████████████████████████ ] as factors in its standing analysis, especially because it

had engaged in business activities during the period of review, [████████████████

██████████████ ] Luscious Br. at 18-21.  As we explained above, Commerce explained

that the relative number of sales of domestic like product, and other commercial activities, are

not solely dispositive of the wholesaler question.  *See* Appx80179; Appx1181.  Luscious again

merely disagrees with the weight that Commerce afforded to some of these factors.  *See*

*Downhole Pipe*, 776 F.3d at 1377.

 Explained another way, Luscious challenges the scope or breadth of Commerce's factual

wholesaling operations analysis, arguing that certain factors are not required by statute or

regulation for a wholesaler to seek standing.  *See* Luscious Br. at 18-21.  Luscious, however,

does not cite any authority rebutting Commerce's authority to *request* such information, and we

are not aware of any such authority.  Indeed, again, Commerce requested *the same information*

from both Luscious and QMC, with both parties seeking to assert wholesaler standing.  *See*

Appx80006-80009, Appx80059-80067.  Commerce has a practice of requesting information

about a company's history and general operations, domestic like product purchases and sales, and subject merchandise purchases and sales, when that company is seeking to assert wholesaler standing. *Id*. Due to certain ambiguities in Luscious's response, Commerce issued a supplemental questionnaire to Luscious to further develop the record regarding the broad categories of Commerce's analysis. Appx80131-80134. Commerce is permitted to request such information, and Commerce must make its determination on the record *as a whole*. *See, e.g.*, 19 U.S.C. §§ 1516a(b)(1)-(2) (limiting review to the record before the agency and establishing what constitutes that record); *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543-44 (1978) ("Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties."); *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006) (requiring review of the entire record); *Navneet Educ. Ltd. v. United States*, No. 22-00132, 2023 Ct. Intl. Trade LEXIS 194, at *27-28, Slip Op. 2023-191 (Ct. Int'l Trade Dec. 29, 2023) (Commerce is "under a duty to consider the record as a whole."); C*heng Shin Rubber Ind. Co. v. United States*, No. 21-00398, 2023 Ct. Intl. Trade LEXIS 19, at *29 (Ct. Int'l Trade Feb. 13, 2023) (finding that it would be legal error for Commerce to "refuse to consider evidence bearing on the issue before it"). Luscious cites no authority that would undermine Commerce's request for the information.

Thus, Commerce reasonably determined that Luscious's limited transactions do not reflect a commercially reasonable and sustainable business activity. *See* Appx1182, Appx80179-80181. For example, the [███████████████████████████████

███████████████████████████████████████████████]

████████████████████ ] were some, but not all of the factual indicators that brought the

*bona fides* of Luscious's wholesaling operations into question.  *Id.*

    Citing 19 U.S.C. §§ l677(4)(C)(ii) and 1673(2)(B), Luscious claims that the statute

considers that companies in their formative stages would have been able to request relief from

Commerce and the U.S. International Trade Commission, such that it is reasonable for Luscious

to not have ██████████████████████ ].  Luscious Br. at 20.  This argument is

unpersuasive.  These statutory provisions do not apply to Commerce, let alone to any relief

sought by Luscious.  Rather, 19 U.S.C. § 1673(2)(B) applies to the initiation standard for injury

determinations by the International Trade Commission.  Specifically, one of the elements for the

imposition of antidumping duties is if the International Trade Commission determines that the

"establishment of an industry in the United States is materially retarded."  19 U.S.C.

§ 1673(2)(B).  Luscious also cites 19 U.S.C. § 1677(4)(C)(ii), which defines the term "industry,"

as used in § 1673(2)(B), and "regional industry."  Crucially, the "term 'industry' means the

*producers* as a whole of a domestic like product," and "term 'regional industry' means the

domestic *producers* within a region who are treated as a separate industry under this

subparagraph."  19 U.S.C. §§ 1677(4)(A) & (C) (emphasis added).  Although Luscious seeks to

participate in the proceeding as a *wholesaler*, contrary to its argument, it would not been

"eligible to apply for relief from unfair imports under these statutes," which apply to only

*producers*.  *See* Luscious Br. at 21.  Therefore, Commerce reasonably rejected this argument and

explained that a statutory framework discussing injury determinations for a broader group of

*producers*, is not instructive for analyzing the *wholesaling operations* of a new company seeking

to participate in decades-old proceeding.  *See* Appx1182.

Additionally, Luscious argues that Commerce found [███████████████████

████████████████], and this should not have disqualified it as wholesaler, since a

[████████████████████████████████████████████████████████████]

Luscious Br. at 21-22. Luscious incorrectly states Commerce's finding. Commerce specifically

stated that it "never claimed to make an affiliation finding under {19 U.S.C. §§ 1677(33)}.

Rather, {Commerce} merely analyzed information relating to whether the sales transaction

between {[██████]} and {[████]} was executed on an arm's-length basis as one of the factors

for determining whether Luscious Seafoods' commercial activities are *bona fide*." Appx1183.

Specifically, Commerce explained that inconsistencies arose when Luscious stated that it had

[████████████████████████████████████████████████████████████

████████████████████████████████████], while also

acknowledging that the owner of [██████] was [████████████████████████████

████████]. Appx1182-1183, Appx80180 (citing Appx80142).

Undeterred, Luscious responds that even though it purchased domestic like product from

[██████], it also purchased domestic like product from [████████████████], such that when

the product was resold to ██████, it was done on an arm's length basis. Luscious Br. at 22 (citing

Appx1084-1208). This argument fails to consider Commerce's concern regarding the [██████

██████] from Luscious's resales; nonetheless, this argument does not overcome Commerce's

concern about the reported inconsistencies in the first place. *See* Appx1183; *see also Globe*

*Metallurgical, Inc. v. United States*, 865 F. Supp. 2d 1269, 1276 (Ct. Int'l Trade 2012)

(substantial evidence review "contemplates {that} more than one reasonable outcome is possible

on a given administrative record").

Further, Luscious compares its purchases and resales to another wholesaler who sought standing in this review, QMC, and argues that Commerce's explanation regarding Luscious's wholesaling operations was arbitrary because Luscious [███████████████████ ████████████████]. Luscious Br. at 22-23. This argument is meritless. First, Commerce has previously analyzed QMC's wholesaling operations and determined that it was a *bona fide* wholesaler with standing to request an administrative review *in a prior proceeding*, finding that it first had standing to request a review during the 2018-2019 period of review. Final Results 2018-2019 AR IDM at Comment 1 ("QMC {has} submitted sufficient evidence of the *bona fide* nature of their sales of domestic like product . . . {a}s a result, we find that CBBC/QMC are properly considered U.S. wholesalers of domestic like product and are domestic interested parties under {19 U.S.C. § 1677(9)(C)} and {19 C.F.R. § 351.102(b)(17).}"). Second, each standing question is answered on a case-by-case basis. Even after previously finding that QMC is a *bona fide* wholesaler in a prior review, Commerce conducted the *same* questionnaire process to both QMC and Luscious in this administrative review. *See* Appx80006-80009, Appx80059-80067. Third, as Commerce explained, it is Commerce's practice to *not* enforce a minimum level of commercial activity. Appx1181. Even if this Court accepts Luscious's arguments, that Luscious bought and resold more domestic like product, this does *not* support Luscious's argument that the companies have been treated differently, when Commerce has scrutinized QMC over two reviews.

Finally, Luscious argues that Commerce acted inconsistently with its practice when it rescinded Luscious's review requests because there were no "flagrant errors" present with Luscious's record or documentary evidence, compared to other instances when Commerce has rescinded certain reviews. Luscious Br. at 17-18. But Luscious entirely fails to acknowledge

Commerce's rescission practice.  Specifically, Commerce has a practice of rescinding review requests when record evidence does not support a finding that a company is a *bona fide* wholesaler or producer, and thus, does not have standing to request an administrative review. *See* Appx1184, Appx80181; *see also Certain Cased Pencils From the People's Republic of China*, 89 Fed. Reg. 74,894, 74,895 (Dep't of Commerce Sept. 13, 2024) (rescission admin. review) ("{B}ased on the information on the record, Commerce determined that Aloha was not a *bona fide* producer, manufacturer, or wholesaler of a domestic like product during the {period of review} . . . because Commerce declined to find that Aloha is a domestic interested party, its request for review of 14 companies is void.").  Contrary to Luscious's meritless argument, Commerce has a predictable practice of rescinding review requests found to not be valid, and substantial evidence supports Commerce's determination that Luscious was not a *bona fide* wholesaler.  *See* Appx1181-1184.

<u>CONCLUSION</u>

For these reasons, we respectfully request that the Court deny plaintiff's motion, sustain Commerce's final results, and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

<u>/s/ Reginald T. Blades, Jr.</u>
REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:                          <u>/s/ Kara M. Westercamp</u>
K. GARRETT KAYS                      KARA M. WESTERCAMP
Attorney                             Senior Trial Attorney
U.S. Department of Commerce          United States Department of Justice

34

Office of the Chief Counsel for Trade
 Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230

Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 305-7571
Email: kara.m.westercamp@usdoj.gov

December 13, 2024

*Attorneys for Defendant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the Rules of this Court, the Court's

Standard Chamber Procedures, and the Court's scheduling order in that it contains 9,865 words,

including text, footnotes, and headings.

<u>/s/Kara M. Westercamp</u>
 KARA M. WESTERCAMP