IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| LUSCIOUS SEAFOOD LLC,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>　　　　　　　Defendant,<br><br>CATFISH FARMERS OF AMERICA, *et al.*,<br><br>　　　　　　　Defendant-Intervenors. | Before: Hon. Stephen Alexander Vaden, Judge<br><br>Court No. 24-00069<br><br><u>NON-CONFIDENTIAL VERSION</u><br><br>Business Proprietary Information Removed from Pages: 2-5, 8, and 10-11 |

## RESPONSE BRIEF OF DEFENDANT-INTERVENORS, CATFISH FARMERS OF AMERICA, *et al.*

Nazak Nikakhtar, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc.*

**January 17, 2025**

Ct. No. 24-00069                                                    NON-CONFIDENTIAL VERSION

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. RULE 56.2 STATEMENT .................................................................................................. 1

III. SUMMARY OF ARGUMENT .......................................................................................... 1

IV. ARGUMENT ....................................................................................................................... 2

    A.    Factual Background ................................................................................................. 2

    B.    Commerce's Treatment of Luscious Effectuated Congress's Intent ....................... 5

    C.    Commerce's Xanthan Gum Determination Does Not Undermine
the Analysis Here ............................................................................................................. 7

    D.    Substantial Record Evidence Supports Commerce's Conclusion........................... 9

V. CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brother Indus. (USA), Inc. v. United States*,
  16 CIT 789, 801 F. Supp. 751 (1992) ...................................................................................6

*CP Kelco US, Inc. v. United States*,
  24 F. Supp. 3d 1337 (Ct. Int'l Trade 2014) ...........................................................................9

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2444, 2263 (2023) ................................................................................................5

*Mitsubishi Heavy Indus., Ltd. v. United States*,
  275 F.3d 1056 (Fed. Cir. 2001) ...........................................................................................10

*Zhejiang DunAn Hetian Metal Co. v. United States*,
  652 F. 3d 1333 (Fed. Cir. 2011) ............................................................................................9

**Statutes**

19 U.S.C. § 1673a(b)(1) ................................................................................................................6

19 U.S.C. § 1673a(c)(4) ................................................................................................................6

19 U.S.C. § 1675(a) ......................................................................................................................6

19 U.S.C. § 1675(a)(1) ..................................................................................................................5

19 U.S.C. § 1675(a)(2)(B)(iv) .......................................................................................................6

19 U.S.C. § 1677(4)(A) .................................................................................................................6

19 U.S.C. § 1677(9)(C) .................................................................................................................5

**Other Authorities**

Omnibus Tariff Act of 1984, H.R. Rep. 98-1156 (1984) ...............................................................6

Trade Remedies Reform Act of 1984, H.R. Rep. 98-725 (1984) ..................................................6

*Xanthan Gum from the People's Republic of China*,
  89 Fed. Reg. 8,165 (Dep't of Commerce Feb. 6, 2024) ........................................................8

Ct. No. 24-00069 NON-CONFIDENTIAL VERSION

I. **INTRODUCTION**

On behalf of Defendant-Intervenors the Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc. (collectively "CFA"), we respectfully submit this brief in opposition to the September 13, 2024 motion for judgment on the agency record and memorandum in support filed by Plaintiff Luscious Seafood LLC ("Luscious"). *See* Pl.'s Mot. for J on the Agency Record and accompanying Mem. of Law in Support (Sept. 13, 2024), ECF Nos. 33 and 33-1 ("Luscious's Brief"). CFA adopts the arguments made by Defendant the United States ("the Government") in its December 13, 2024 response to Luscious's motion and supportive memorandum. *See* Def.'s Resp. to Pl.'s Mot. for J on the Agency Record (Dec. 13, 2024), ECF No. 35 ("Government's Brief"). As such, CFA does not repeat those arguments here, but provides additional context and arguments to aid the Court's understanding of the issues in this appeal.

II. **RULE 56.2 STATEMENT**

CFA adopts the statement provided in the Government's Brief and requests that this Court affirm the U.S. Department of Commerce ("Commerce") in finding that Luscious lacked standing to request a 2021-2022 administrative review of the antidumping duty order on certain frozen fish fillets from the Socialist Republic of Vietnam.

III. **SUMMARY OF ARGUMENT**

This Court should affirm Commerce's finding that Luscious lacked standing to request an administrative review for the 2021-2022 review period. As explained in the Government's Brief and further detailed below, Luscious has not shown any legal error in Commerce's determination.

1

Rather, Commerce acted consistently with the Tariff Act of 1930's overall text, structure, and purpose, effectuating Congress's intention that Commerce not expend its limited resources in reviewing shipments in which no party with appropriate standing has expressed an interest. Nor has Luscious established that Commerce deviated improperly from its past practice in analyzing whether Luscious had *bona fide* domestic wholesaling activity that indicated a concrete and legitimate stake in the margins of the entities – including Bien Dong Seafood Company Ltd ("Bien Dong") – for which Luscious requested a review. Substantial record evidence also supports the agency's conclusion that Luscious did not have such *bona fide* wholesaling activity during the 2021-2022 review period. Accordingly, Commerce's determination that Luscious did not have standing to request a review should be affirmed.

IV.    **ARGUMENT**

    A.    **Factual Background**

Luscious is the only entity to have requested (without later withdrawal) a 2021-2022 review of certain Vietnamese producers/exporters, including Bien Dong. *See* Appx1129 n.12; Appx1133; Appx1136 n.50. Luscious claimed that it had standing to request the review as a wholesaler of domestic frozen catfish fillets. Appx1000-1001. After other parties called the company's claim into question, Commerce issued two questionnaires to solicit information regarding Luscious's alleged wholesaling activity. *See* Appx1025-1027; Appx80132-80134, Appx1064-1066. In the meantime, operating on the assumption that Luscious had standing to request a review, Commerce initially selected Bien Dong as one of two mandatory respondents. Appx1130.

Luscious's responses to Commerce's questionnaires revealed that it had only been [          ], and had yet to set up [                                                                    ]. Appx80006, Appx1045; Appx80140, Appx1072. During the review period, it made [    ]

purchases of domestic frozen fish fillets, which it then sold [

].[1] Appx80007-80008, Appx1046-1047; Appx80017-80035, Appx1055-1056; Appx80044-80048, Appx1059-1060; Appx80144-80145, Appx1076-1077. Luscious reported [                                    ] of domestic frozen catfish fillets after the 2021-2022 review period ended. Appx80009, Appx1048.

Luscious was owned by [

] distribution. Appx80141, Appx1073. However, [                    ] and [                    ], were [

], a company from which Luscious bought frozen fish fillets. *See id.*; Appx80530, Appx1572; Appx81364-81370, Appx2350-2351; Appx81371-81394, Appx2352-2353.[2] Luscious's operations appear to have been conducted at least partially out of – or at least associated with – [                    ]; the record also suggests that [

]. Appx80530, Appx1572; Appx81364-81370, Appx2350-2351; Appx81371-81394, Appx2352-2353; Appx80206, Appx1217; Appx80235-80241, Appx1240-1241; Appx80250-80252, Appx1250-1251.

For most of the review period, Luscious's operations were conducted using a [

] account, potentially – though not definitively, given that Luscious did not provide documentation establishing account ownership – [          ]. *See, e.g.*, Appx80144,

---

[1]   Luscious appears to have also [
    ] during the review period. Appx80009, Appx1048; Appx 80142, Appx1074; Appx80160, Appx1085-1086. It is unclear where or from whom Luscious obtained this product.

[2]   [          ] was also connected with a [                                    ]. Appx80530, Appx1572; Appx81371-81394, Appx2352-2353.

3

Appx1076; Appx80213, Appx1224; Appx80180, Appx1099. The funds to pay for Luscious's purchases of domestic frozen fish fillets during the review period [

]. Appx80017-80035, Appx1055-1056; Appx80012, Appx1051. The source of the funds is unclear, as Luscious did not provide requested copies of its bank statements, or provide the deposit slips and checks that Commerce requested in a bid to understand Luscious's operating capital. Appx80144, Appx1076; Appx 80146, Appx1078; Appx 80161-80169, Appx1087-1088; Appx80210-80211, Appx1221-1222; Appx80179-80180, Appx1098-1099. Likewise, Lucious failed to provide copies of certain requested business registration and tax documents. Appx80180, Appx1099.

After considering Luscious's questionnaire responses, Commerce determined that Luscious did not have standing to request review as a domestic wholesaler. Appx80177-80181, Appx1096-1100; *see also* Appx1178-1184. Noting its case-by-case approach to standing determinations, Commerce explained that its goal was to ensure that reviews were conducted based on interest expressed by parties with *bona fide* relevant activity, *i.e.*, operations that demonstrated that each requesting party had a good-faith, substantive stake in the outcome of the proceedings that each party requested the agency to conduct. Appx80180-80181, Appx1099-1100; Appx1181-1182.

Commerce noted that not only had Luscious been [     ], it had yet to [

] of the sort associated with going concerns, such as a [

]. Appx80179, Appx1098. It had made [     ] of domestic fish fillets [     ], and [     ]. *Id.* It also failed to provide the agency with requested documentation that would have allowed Commerce to further analyze its operations. Appx80179-80180; Appx1098-1099. Commerce additionally noted that the

record indicated that Luscious had a relationship with its supplier, [

], notwithstanding Luscious's statement that there was no such relationship, and that no other parties were involved in its sale or distribution of domestic fish fillets. Appx80180, Appx1099; Appx1181-1182.

This appeal followed.

### B. Commerce's Treatment of Luscious Effectuated Congress's Intent

Congress has defined the term "interested party," for purposes of the trade remedy laws, to include "a . . . wholesaler in the United States of a domestic like product." 19 U.S.C. § 1677(9)(C). The trade remedy law also requires Commerce to conduct administrative reviews of outstanding dumping orders only upon request. 19 U.S.C. § 1675(a)(1). Citing *Loper Bright Enters. v. Raimondo*, Luscious argues that Congress intended Commerce to conduct a review as to any parties named in a request filed by a party that resold the domestic like product to another seller during the review period. Luscious's Brief at 23-24; *see also id*. at 9-12.

Luscious is wrong. Under *Loper Bright*, federal statutes must be interpreted with a single goal in mind: to "effectuate the will of Congress." 144 S. Ct. 2444, 2263 (2023). While Congress did not define "wholesaler" in the antidumping statute, 19 U.S.C. § 1677(9)(C), the overall text, structure, and purpose of the law do not reflect any intention to allow parties with merely tangential or fugitive wholesaling activity to force Commerce into action—particularly for potentially manipulative ends. Rather, Congress intended Commerce to conduct administrative reviews only where parties with sufficient, and legitimate, "skin in the game" request that the agency do so.

While the trade remedy law once directed Commerce to annually review all dumping margins even where no one requested that it do so, Congress later amended the statute to require such reviews only upon request, to reduce the burden on all parties and ensure that reviews are not

5

conducted where "circumstances do not warrant it." *See* Omnibus Tariff Act of 1984, H.R. Rep. 98-1156 (1984) at 181; Trade Remedies Reform Act of 1984, H.R. Rep. 98-725 (1984) at 22-23; *see also* 19 U.S.C. § 1675(a). Beyond this, as the Courts have repeatedly found, Commerce has the inherent authority to protect the integrity of its proceedings. *See* Government's Brief at 13 (citing *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1360-61 (Fed. Cir. 2008) and *N.M. Garlic Growers Coal. v. United States*, 953 F.3d 1358, 1371 (Fed. Cir. 2020)). Thus, in determining whether "circumstances warrant" the conduct of a review, the agency must consider whether a party invoking domestic interested party status has supported that status based on candid and complete information. Only in this way can Commerce advance the statutory goal of preventing the waste of party resources based on requests filed by "persons with no stake in the result" of the agency's proceedings. *See, e.g.*, H.R. Rep. 98-1156 at 181; H.R. Rep. 98-725 at 22-23; *Brother Indus. (USA), Inc. v. United States*, 16 CIT 789, 793-94, 801 F. Supp. 751, 757 (1992) (internal citations omitted) (discussing requirements for filing an antidumping duty petition).

Indeed, the antidumping law does not simply permit any party claiming status as an "interested party" to move the Government to action based solely on such claims. For example, while a "wholesaler in the United States of a domestic like product" may file a petition requesting an antidumping duty investigation, Commerce may only initiate such an investigation where the requestor shows that it has filed on behalf of domestic producers or workers representing a certain percentage of the U.S. industry producing the relevant product. 19 U.S.C. §§ 1673a(b)(1) & (c)(4); *see also id.* §§ 1677(4)(A) & (9)(C). Likewise, foreign producers or exporters that have never participated in an established case but wish to obtain their own margins outside of the normal review cycle must establish that their requests are underpinned by "bona fide sales" to the United States. *Id.* § 1675(a)(2)(B)(iv). In this regard, the antidumping law mirrors a fundamental premise

of the U.S. legal system: that relief cannot be obtained absent a showing of legitimate interest – *i.e.*, some concrete and particularized injury that will occur, or has already occurred, to the person invoking government action.

Given the foregoing, Luscious's contention that Commerce was limited by law to answering the yes/no question of whether Luscious had resold any domestic catfish during the review period is untenable. Rather, it was incumbent upon Commerce to determine whether Luscious had established a stake in the administration of the antidumping duty order. The need for such a determination was particularly strong in this case, as Luscious requested review of parties in which longstanding participants—including the petitioning domestic industry Coalition, companies that successfully demonstrated domestic wholesaler status, and respondent firms—had disclaimed any interest, one of which would have been treated as a mandatory respondent.

### C. Commerce's Xanthan Gum Determination Does Not Undermine the Analysis Here

Beyond arguing unpersuasively that the statute contemplates granting broad status to request review of respondent parties to any entity that has resold domestic catfish for further resale, Luscious argues that Commerce deviated from its past practice without adequate explanation in finding that Luscious lacked standing to request a review as a domestic wholesaler. Luscious particularly argues that the agency's analysis, and its conclusion, were inconsistent with its treatment of a company claiming wholesaler status in an administrative review involving Chinese xanthan gum.

Luscious's argument is not compelling. As an initial matter, Commerce has repeatedly analyzed standing in the manner it did so here, *i.e.*, by looking to whether the company seeking wholesaler standing has demonstrated its engagement in "bona fide" wholesaling activity – *i.e.*, resales that reflect sustainable, commercially reasonable behavior and are likely to be typical of

7

the company's ongoing resales of domestic product. *See* Government's Br. at 15-16. Luscious cites the xanthan gum case for the proposition that wholesalers may have standing even where they do not meet the "bona fide" sales criteria that are required of new foreign shippers seeking accelerated, out-of-cycle reviews. Luscious's Br. at 11-12. But as the Government cogently explains, while Commerce rejected the notion that a wholesaler standing analysis necessarily had to follow the new shipper criteria in the xanthan gum review, the agency nonetheless examined many of the same factors that it examined with respect to Luscious here. Government's Br. at 20-21.

Further, there are important factual distinctions between the case at bar and the xanthan gum review. First, Commerce explicitly found that the company asserting wholesaler standing in the xanthan gum review provided all the information that the agency requested. Issues and Decision Memorandum accompanying *Xanthan Gum from the People's Republic of China*, 89 Fed. Reg. 8,165 (Dep't of Commerce Feb. 6, 2024) (final results of antidumping duty admin. rev.; 2021-2022) at 39-44. By contrast, Luscious here refused to provide documentation that Commerce requested, leaving the agency unable to fully analyze issues fundamental to assessing Luscious's claim that its [           ] of domestic merchandise gave it a concrete stake in the outcome of the review that it requested. Appx80179-80180, Appx1098-1099. It was entirely appropriate – and consistent with its case-by-case, fact-intensive approach to standing determinations – for Commerce to come to different conclusions in the case at bar and the xanthan gum review, given the distinct factual predicates of the two proceedings. *See* Appx1184 ("{E}very situation is different, and Commerce analyzes each party's claim to wholesaler status on a case-by-case basis based on their own facts and circumstances.")

Too, the practical implications of the standing decision in the xanthan gum case were very different from those attending the decision here. The net result of the standing determination in the

xanthan gum review was simply to add one more exporter to the larger pool of non-selected separate rate respondents. As such, the decision did not impact the agency's margin calculations at all. By contrast, Luscious's request would have altered Commerce's mandatory respondent selection, and would thus have impacted (1) the agency's overall workload and mandatory respondent calculations by either adding or substituting a mandatory respondent, and (2) the calculation of the separate rate. *See* Appx1129 n.12; Appx1133; Appx1136 n.50. These distinct practical implications further support Commerce distinct treatment of the two cases, particularly given Congress' desire that Commerce conducts administrative reviews only where "circumstances warrant," and with due regard for the burden on all parties – including agency staff and respondent parties that would be dragged into mandatory respondent status. *See* Appx1183 (noting that "a wholesaler of domestic like product, under the Act and Commerce's regulations, has very broad purview regarding for which companies it can request review and, as such, Commerce must be thorough in assessing standing for any company claiming wholesaler status.")

**D.        Substantial Record Evidence Supports Commerce's Conclusion**

Finally, substantial record evidence supports Commerce's conclusion that Luscious failed to establish domestic wholesaler standing. The courts have framed the substantial evidence standard as a review for "reasonableness," in which "th{e} court's function is merely to ascertain 'whether there was evidence which could reasonably lead to the agency's conclusion.'" *CP Kelco US, Inc. v. United States*, 24 F. Supp. 3d 1337, 1344 (Ct. Int'l Trade 2014), quoting *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Because there may more than one reasonable way to interpret a record, a plaintiff cannot prevail merely by putting forward an alternative view of the evidence, even if that alternative view is reasonable. Rather, it must show that no reasonable mind could accept the agency's conclusion. *Zhejiang DunAn Hetian Metal Co.*

*v. United States*, 652 F. 3d 1333, 1340, 1344 (Fed. Cir. 2011). As such, in mounting a substantial evidence challenge, a party "has chosen a course with a high barrier to reversal." *See Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1060 (Fed. Cir. 2001).

Entirely apart from the quantity and value of the goods at stake – factors that the agency did not consider in analyzing Luscious's standing here, Appx80179-80180, Appx1098-1099; Appx1181 – a reasonable mind could easily accept Commerce's conclusion that Luscious failed to establish that it was engaged in ongoing, commercially sustainable wholesaling of domestic fish fillets, and otherwise had a concrete stake in the outcome of the review it requested. It had [

] of domestic fish fillets over its [                   ], and [                                  ]. Appx80179, Appx1098. [               ] resold fillets were purchased [

]. *See* discussion *supra* at 2-4. Luscious was so [

] that it had not [

]. *Id.* It conducted its business [                                          ] of the review period using a [                          ]. *See* discussion *supra* at 2-4. It [

], but failed to provide Commerce with requested documentation as to how its operations were funded. *Id.*; Appx80179-80180, Appx1098-1099. Beyond its incomplete responses, the record also reflected inconsistencies regarding Luscious's operations. Appx80180, Appx1099. For example, while claiming to have a [                          ], Luscious also provided documentation listing a [               ] as a billing contact. *Id.* And not only was its [

], the phone number on Luscious's local business license belonged [

]. *Id.*; *see also* discussion *supra* at 2-4. This information flatly contradicted Luscious's

10

claims that it had [

] . Appx80180, Appx1099.

While Luscious complains that it was treated disparately from QMC, a separate party that successfully claimed domestic wholesaler status in the proceeding, Lucious's Br. at 22-23, the record regarding QMC further demonstrates the reasonableness of Commerce's treatment of Luscious. As an initial matter, QMC was a known entity that had demonstrated wholesaler standing in prior review periods. Government's Br. at 6-7, 28, 33. QMC also established that it had regular, commercially sustainable wholesaling activity with respect to domestic catfish fillets. In addition to purchasing domestic catfish for resale during the 2021-2022 review period, QMC purchased domestic catfish for resale before and after that period. Appx80062, Appx1111; Appx80064, Appx1113. Likewise, it resold domestic catfish fillets before, during, and after the review period. Appx80066-80067, Appx1115-1116. Overall, QMC submitted information showing that it was a going concern with a sustainable business model, and was actively engaged in buying and reselling seafood products, including the domestic like product, and thus had a concrete stake in the outcome of the review it had requested. Appx80059-80130, Appx1108-1127. By contrast, Commerce reasonably determined that Lucious had not made such a showing.

Ct. No. 24-00069 NON-CONFIDENTIAL VERSION

## V. CONCLUSION

For the reasons provided above and in the Government's Brief, CFA respectfully submits that this Court should affirm Commerce's determination that Luscious lacked standing to request a 2021-2022 review of the antidumping duty order on Vietnamese frozen fish fillets.

Respectfully submitted,

*/s/ Nazak Nikakhtar*
Nazak Nikakhtar, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Defendant-Intervenors Catfish Farmers of America, et al.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Scheduling Order (July 11, 2024), ECF No. 29, the undersigned certifies that this brief complies with the word limitation requirement. The word count for Defendant-Intervenor's Response Brief, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 3,253 words.

*/s/ Nazak Nikakhtar*
(Signature of Attorney)

Nazak Nikakhtar
(Name of Attorney)

Catfish Farmers of America, *et al.*
(Representative Of)

January 17, 2025
(Date)
