Slip Op. 25-153

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| LUSCIOUS SEAFOOD LLC,<br><br>             Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>             Defendant,<br><br>   and<br><br>NTSF SEAFOODS JOINT STOCK COMPANY, et al.,<br><br>             Defendant-Intervenors. | Before: Timothy C. Stanceu, Judge<br><br>Court No. 24-00069 |

OPINION AND ORDER

[Remanding an agency determination in an administrative review of an antidumping duty order on certain frozen fish fillets from the Socialist Republic of Vietnam]

Dated: December 15, 2025

*Camelia C. Mazard*, Doyle, Barlow & Mazard PLLC, of Washington, D.C., for plaintiff Luscious Seafood LLC. With her on the brief was *Andre P. Barlow*.

*Collin T. Mathias*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. On the brief were *Brett A. Shumate*, Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *K. Garrett Kays*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Jonathan M. Freed*, Trade Pacific PLLC, of Washington, D.C. for defendant-intervenors Bien Dong Seafood Company Limited and NTSF Seafoods Joint Stock Company.  With him on the brief was *MacKensie R. Sugama*.

*Nazak Nikakhtar*, Wiley Rein LLP, of Washington, D.C., for defendant-intervenors Catfish Farmers of America, America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc.  With her on the brief were *Maureen E. Thorson* and *Stephanie M. Bell*.

Stanceu, Judge:  Plaintiff Luscious Seafood LLC ("Luscious Seafood" or "Luscious") contests a decision of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") denying it status as a "domestic interested party" in an administrative review of an antidumping duty order on certain frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam"). Commerce denied standing upon determining that Luscious Seafood did not qualify as a "*bona fide* wholesaler."  Before the court is plaintiff's motion for judgment on the agency record.  Concluding that Commerce impermissibly relied on certain findings and failed to provide an adequate explanation of its reasoning, the court remands the decision to Commerce for reconsideration.

## I. Background

The administrative determination contested in this case (the "Final Results") was published as *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Final Results and Partial Rescission of Administrative Review; 2021-2022*, 89 Fed. Reg. 18,595 (Int'l Trade

Admin. Mar. 14, 2024), P.R. Doc. 561, ECF No. 43-1 ("*Final Results*").[1]  Commerce issued

the Final Results upon the completion of the nineteenth administrative review of the

antidumping duty order on certain frozen fish fillets from Vietnam (the "Order"),

which Commerce issued in 2003.[2]  *Notice of Antidumping Duty Order: Certain Frozen Fish*

*Fillets from the Socialist Republic of Vietnam*, 68 Fed. Reg. 47,909 (Int'l Trade Admin.

Aug. 12, 2003) ("*Order*").  Commerce incorporated into the Final Results by reference an

explanatory document, the "Issues and Decision Memorandum."  *Decision Memorandum*

*for the Final Results of the Antidumping Duty Administrative Review: Certain Frozen Fish*

*Fillets from the Socialist Republic of Vietnam; 2021–2022*, P.R. Doc. 556, ECF No. 43-1 (Int'l

Trade Admin. Mar. 5, 2024) ("*Final I&D Mem.*").

---

[1] Documents in the Joint Appendix (Feb. 27, 2025), ECF Nos. 42 (Conf.), 43 (Public) are cited herein as "P.R. Doc. __."  Citations to Joint Appendix documents are to the public versions.

[2] The Order applies to the following products from the Socialist Republic of Vietnam ("Vietnam"):

> [F]rozen fish fillets, including regular, shank, and strip fillets and portions thereof, whether or not breaded or marinated, of the species *Pangasius Bocourti*, *Pangasius Hypophthalmus* (also known as *Pangasius Pangasius*), and *Pangasius Micronemus*.  Frozen fish fillets are lengthwise cuts of whole fish.  The fillet products covered by the scope include boneless fillets with the belly flap intact ("regular" fillets), boneless fillets with the belly flap removed ("shank" fillets), boneless shank fillets cut into strips ("fillet strips/finger"), which include fillets cut into strips, chunks, blocks, skewers, or any other shape.

*Notice of Antidumping Duty Order: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 68 Fed. Reg. 47,909, 47,909 (Int'l Trade Admin. Aug. 12, 2003).

### A.  Proceedings Conducted by Commerce

In 2022, Commerce published a notice inviting requests for an administrative review of the Order for the period of August 1, 2021 to July 31, 2022 (the "period of review" or "POR").  *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 47,187, 47,188 (Int'l Trade Admin. Aug. 2, 2022).  Luscious Seafood identified itself as a "domestic U.S. wholesaler" of domestic fish fillets (specifically, the "domestic like product").  *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam – Antidumping Duty Administrative Review Request* 1 (Aug. 31, 2022), P.R. Doc. 2, ECF No. 43-1.  It requested that Commerce review all known Vietnamese producers and exporters, including the "Vietnam-wide entity," of frozen fish fillets that are subject to the Order (the "subject merchandise") during the period of review.[3]  *Id*. at 1–2 & Attachment.

In the preliminary results of the review, Commerce preliminarily concluded that Luscious Seafood did not have standing as a "domestic interested party" because it

---

[3] The term "Vietnam-wide entity" refers collectively to Vietnamese exporters and producers of the subject merchandise that did not establish independence from government control and therefore did not qualify to receive a "separate rate," i.e., a rate separate from the rate applied to the Vietnam-wide entity.  *See Non-Market Economy Antidumping Proceedings: Assessment of Antidumping Duties*, 76 Fed. Reg. 65,694, 65,694 (Oct. 24, 2011); *Decision Memorandum for the Preliminary Results of the Antidumping Duty Administrative Review: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam; 2021–2022* 7–8 (Int'l Trade Admin. Aug. 31, 2023), P.R. Doc. 498, ECF No. 43-1.

failed to show it was a "bona fide" wholesaler of the domestic like product, and,

accordingly, could not submit a valid request for review of Vietnamese producers and

exporters.  *See Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Preliminary*

*Results of Antidumping Duty Administrative Review, Preliminary Determination of No*

*Shipments, and Notice of Intent To Rescind, in Part; 2021-2022*, 88 Fed. Reg. 61,525, 61,526 &

n.10 (Int'l Trade Admin. Sept. 7, 2023), P.R. Doc. 499, ECF No. 43-1; *Decision*

*Memorandum for the Preliminary Results of the Antidumping Duty Administrative Review:*

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam; 2021–2022* 5–6 (Int'l Trade

Admin. Aug. 31, 2023), P.R. Doc. 498, ECF No. 43-1.  For the Final Results, Commerce

made a final determination that Luscious Seafood lacked standing as a domestic

interested party and rescinded the review of those companies for which the only

pending request for review was made by Luscious Seafood.  *Final I&D Mem.* 4–10, 33;

*Final Results*, 89 Fed. Reg. at 18,597.

Commerce selected two "mandatory" respondents for individual examination in

the nineteenth review, assigning a weighted average dumping margin of $0.00 per

kilogram to a group of companies identified collectively as Vinh Hoan Corporation and

a weighted average dumping margin of $0.18 per kilogram to Can Tho Import Export

Seafood Joint Stock Company.  *Final Results*, 89 Fed. Reg. at 18,595, 18,596 & n.12.

Commerce chose the $0.18 per kilogram rate as the "separate rate" to apply to four

other entities that were not individually examined in the review.  *Id*. at 18,595, 18,596

& n.13.

## B.  Proceedings Before the Court of International Trade

Luscious Seafood commenced this action against the United States in April 2024.

Summons (Apr. 1, 2024), ECF No. 1; Compl. (May 1, 2024), ECF No. 9.

The defendant-intervenors are two Vietnamese producers (NTSF Seafoods Joint

Stock Company and Bien Dong Seafood Company Limited) and various domestic

entities (Catfish Farmers of America, America's Catch, Inc., Alabama Catfish, LLC d/b/a

Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select

Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company,

Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish,

Inc.).  Order on Intervention 1 (May 31, 2024), ECF No. 24.

Plaintiff moved under USCIT Rule 56.2 for judgment on the agency record in

September 2024.  Pl.'s Mot. for J. on the Agency R. (Sept. 13, 2024), ECF Nos. 33 (Conf.),

34 (Public) ("Pl.'s Mot.").

Defendant opposed plaintiff's motion.  Def.'s Resp. to Pl.'s Mot. for J. on the

Agency R. (Dec. 13, 2024), ECF Nos. 35 (Conf.), 36 (Public) ("Def.'s Br.").  The domestic

defendant-intervenors also opposed the motion.  Resp. Br. of Def.-Ints., Catfish Farmers

of Am., *et al*. (Jan. 17, 2025), ECF Nos. 37 (Conf.), 38 (Public).  The Vietnamese

defendant-intervenors opposed the motion as well.  Resp. of Bien Dong Seafood

Co. Ltd. and NTSF Seafoods Joint Stock Co. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the

Agency R. (Jan. 17, 2025), ECF No. 39.

Plaintiff replied in February 2025.  Repl. by Pl. Luscious Seafood LLC to the

Resps. by the United States and Def.-Ints. in Opp'n to Pl.'s Mot. for J. on the Agency R.

(Feb. 13, 2025), ECF Nos. 40 (Conf.), 41 (Public) ("Pl.'s Reply").

## II. DISCUSSION

In moving under USCIT Rule 56.2, Luscious Seafood claims that the Final Results

are "not in accordance with the law, nor reasonable, with respect to the determination

that Luscious did not qualify as a *bona fide* wholesaler of domestic like product during

the POR."  Pl.'s Mot. 24.

### A.  Jurisdiction and Standard of Review

The court exercises jurisdiction under section 201 of the Customs Courts Act of

1980, 28 U.S.C. § 1581(c), pursuant to which the court reviews actions commenced

under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a.[4]

Section 516A allows a party to contest a final determination that Commerce issues to

conclude a review of an antidumping duty order.  *Id.* § 1516a(a)(2)(B)(iii).  In reviewing

a final determination according to Section 516A, the court "shall hold unlawful any

determination, finding, or conclusion found . . . to be unsupported by substantial

---

[4] All citations to the United States Code herein are to the 2024 edition.  All
citations to the Code of Federal Regulations herein are to the 2023 edition.

evidence on the record, or otherwise not in accordance with law."  19 U.S.C.

§ 1516a(b)(1)(B)(i).  Substantial evidence refers to "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  *SKF USA, Inc. v.*

*United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. of N.Y. v.*

*Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229 (1938)).

## B. Statutory and Regulatory Provisions Governing Requests Submitted by Domestic Interested Parties for Reviews of Foreign Exporters or Producers

Section 751(a)(1) of the Tariff Act directs Commerce to conduct a review "[a]t

least once during each 12-month period beginning on the anniversary of the date of

publication of . . . an antidumping duty order . . . *if a request for such a review has been*

*received*."  19 U.S.C. § 1675(a)(1) (emphasis added).  The statute directs that Commerce,

in the review, "determine . . . the amount of any antidumping duty" by determining

"the normal value and export price (or constructed export price) of each entry of the

subject merchandise."  *Id*. § 1675(a)(1)–(2).

Section 751(a)(1) of the Tariff Act does not identify who may request a 12-month

("periodic") review of an antidumping duty order.  The Department's regulations

provide that a "domestic interested party" may request review "of specified individual

exporters or producers covered by an order . . . if the requesting person states why the

person desires the Secretary [of Commerce] to review those particular exporters or

producers."  19 C.F.R. § 351.213(b)(1).

The regulations provide that the term "'[d]omestic interested party' means an interested party described in subparagraph (C), (D), (E), (F), or (G) of section 771(9) of the [Tariff] Act [19 U.S.C. § 1677(9)]." *Id*. § 351.102(b)(17).  Subparagraph (C) of section 771(9) defines "the term 'interested party'" to include, *inter alia*, "a manufacturer, producer, or *wholesaler* in the United States of a domestic like product." 19 U.S.C. § 1677(9)(C) (emphasis added).  Section 771(10) of the Tariff Act provides that "[t]he term 'domestic like product' means a product which is like, or in the absence of like, most similar in characteristics and uses with, the article subject to an investigation under this subtitle."[5]  *Id*. § 1677(10); *see also* 19 C.F.R. § 351.102(a).  Neither the Tariff Act nor the regulations define the term "wholesaler" as used in Section 771(9)(C).

**C.  The Contested Decision to Deny "Domestic Interested Party" Status to Luscious Seafood**

After Luscious Seafood submitted its August 31, 2022 request for review of all Vietnamese producers and exporters of the subject merchandise, Commerce sent Luscious Seafood two questionnaires directed to the issue of standing as a domestic

---

[5] During an antidumping duty investigation, the "domestic like product" or "products" are initially determined by the U.S. International Trade Commission in the preliminary investigation it conducts according to 19 U.S.C. § 1673b to make a preliminary determination of reasonable likelihood of injury or threat of material injury to a domestic industry or of material retardation of the establishment of an industry. The Commission conducts its final investigation to determine injury or threat of material injury to a domestic industry or material retardation of the establishment of an industry according to 19 U.S.C. § 1673d.

interested party. *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Questionnaire for Luscious Seafood* 1 (Int'l Trade Admin. Oct 14, 2022), P.R. Doc. 33, ECF No. 43-1 ("*Initial Questionnaire*"); *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Supplemental Questionnaire for Luscious Seafood* (Int'l Trade Admin. Dec. 13, 2022), P.R. Doc. 121, ECF No. 43-1 ("*Supp. Questionnaire*").

On October 25, 2022, Luscious Seafood submitted its response to the October 14, 2022 "Initial Questionnaire," with accompanying exhibits. *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam – Wholesaler Questionnaire Response* (Oct. 25, 2022), P.R. Doc. 43, ECF No. 43-1 ("*Initial Questionnaire Resp.*"). The December 13, 2022, "Supplemental Wholesaler Questionnaire" requested "additional information regarding Luscious Seafoods' [*sic*] operations" and additional documentation such as tax returns, financial statements, and documents relating to Luscious Seafood's purchases and sale of the domestic like product during the period of review. *Supp. Questionnaire* 1–4. On January 3, 2023, Lucious Seafood submitted its response to the Supplemental Wholesaler Questionnaire. *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam – Supplemental Questionnaire Response* (Jan. 3, 2023), P.R. Doc. 157, ECF No. 43-1 ("*Supp. Questionnaire Resp.*").

On January 27, 2023, Commerce issued a "Standing Memorandum" finding preliminarily that "the record does not demonstrate that Luscious Seafood[] was a *bona fide* wholesaler of domestic like product during the POR" and was therefore not

"a domestic interested party pursuant to section 771(9)(C) of the Act [19 U.S.C.

§ 1677(9)(C)]." *Antidumping Duty Administrative Review of Certain Frozen Fish Fillets from*

*the Socialist Republic of Vietnam, 2021–2022: Luscious Seafoods' Standing to Request Review* 5

(Int'l Trade Admin. Jan. 27, 2023), P.R. Doc. 196, ECF No. 43-1 ("*Standing Mem.*").

Commerce stated that it would "treat Luscious Seafood['s] review request as void" and

that its "review will be rescinded with respect to any companies that are under review

exclusively due to the Luscious Seafood[] request." *Id.*  In the Final Results, Commerce

"continue[d] to find that Luscious Seafood[] did not qualify as a *bona fide* wholesaler of

domestic like product during the POR and, thus, Luscious Seafood does not have

standing to request a review as a domestic interested party." *Final I&D Mem.* 7.

Commerce gave various reasons for its reaching its ultimate conclusion that

Luscious Seafood lacked standing as a domestic interested party.  The court

summarizes these reasons below.

Explaining in the Issues and Decision Memorandum that "[t]he focus of the

analysis is on the presence of *bona fide* wholesaling operations," *id.*, Commerce first

stated a general conclusion that "the details surrounding Luscious Seafood['s]

operations, when taken as a whole, warrant a finding that the record does not support

Luscious Seafood['s] claim that it was a *bona fide* wholesaler of domestic like product

during the POR," *id*. at 7–8 (citing *Standing Mem*. 4).  The Issues and Decision

Memorandum concluded, in particular, that "Commerce was not able to confirm the

*bona fides* of Luscious Seafood['s] commercial transactions." *Id*. at 10.

Second, Commerce found that "Luscious Seafood[] failed to provide, at our

explicit request, certain information (relating to the company's banking) as well as

various business documents, which we deemed relevant to our analysis." *Id*. at 8 (citing

*Standing Mem*. 4).

Commerce found, third, that responses by Luscious Seafood to the Department's

inquiries "contained inconsistencies with respect to the timing of its initial activity and

the personnel involved in the company's operations." *Id*. (citing *Standing Mem*. 4).

Fourth, Commerce found that Luscious Seafood "mischaracterized its

relationship with another company, leading to an inconsistent record in this regard."

*Id*. at 9 (citing *Standing Mem*. 4).

### D.  Having Failed to Define What It Meant by the Term "*Bona Fide*" Wholesaler, Commerce Provided No Convincing Explanation of Why Luscious Seafood Did Not Qualify as One

Commerce did not define what it meant when it used the term "*bona fide*

wholesaler."  The literal translation of the Latin term is "good faith."  *See Bona Fide*,

Black's Law Dictionary (12th ed. 2024) ("1. Made in good faith; without fraud or deceit.

2. Sincere; genuine.").

Commerce did not point to, or base its decision on, record evidence that Luscious

Seafood's business transactions during the POR were fraudulent, deceitful, or otherwise

made on a false pretense.  As a result, the Department's decision lacks findings or

reasoning under which Luscious Seafood's business transactions during the POR were

not made in good faith.  Instead, Commerce "examined information relating to various

criteria in our analysis" and explained that "[t]hese considerations included the

company's limited history and timing of its establishment, the limited number of

transactions during the POR, and the extent to which those limited transactions

reflected a commercially reasonable and sustainable business activity."  *Final I&D*

*Mem.* 8 (citing *Standing Mem.* 3).  Commerce pointed to the fact that Luscious Seafood

"made a single sale of domestic like product to a retailer during the POR."  *Id.* at 9.

Commerce also noted that this was not a profitable sale.  *Standing Mem.* 3.  There are

two problems with this analysis.

  First, what Commerce described as its "considerations" are not directed to

whether the business transactions were made in good faith but instead pertain

generally to how well-established Luscious Seafood was as an enterprise during the

POR.  The Issues and Decisions Memorandum states, nevertheless, that "[i]n any case,

Commerce's treatment of Luscious Seafood[] was clearly not based solely on it [*sic*]

being a new company."  *Id.* at 8.  Regardless, the Issues and Decision Memorandum

does not explain why Luscious Seafood's inexperience as a going concern at the time of

the POR was a convincing reason supporting disqualification as a domestic interested

party.  In the absence of a finding, or record evidence, that Luscious Seafood's business

transactions were *not* made in good faith, the Department's offering as a reason for its

decision that "it is incumbent upon Commerce to protect the integrity of its

proceedings," *id*. at 9 (footnote citation omitted),[6] rings hollow.

Second, Commerce identified the source of its considerations as those it applies

when determining whether a U.S. sale qualifies as a *bona fide* transaction for purposes of

qualifying a party for a "new shipper" review.  *Id.* at 8 & n.20 (listing, as non-exclusive

"factors," "the timing of the sale; the sale price and quantity; the expenses arising from

the sales transaction; whether the sale was sold to the customer at a loss; and whether

the sales transaction between the exporter and importer was executed on an arm's-

length basis").  In a new shipper review, new exporters and producers may request a

periodic review to receive an individual dumping margin or countervailing duty rate.

19 U.S.C. § 1675(a)(2)(B)(i).  Any rate assigned to a new shipper "shall be based solely

on the bona fide United States sales" it "made during the period covered by the

---

[6] In its footnote, the agency cited *New Mexico Garlic Growers Coalition v. United States*, 953 F.3d 1358, 1371 (Fed. Cir. 2020) and *Harmoni International Spice Inc. v. Hume*, 914 F.3d 648 (9th Cir. 2019).  *New Mexico Garlic Growers* is inapposite because the domestic producer there did not contest the administrative determination that its review request contained misrepresentations, including that it had not colluded with the exporter for which it requested review.  *N.M. Garlic Growers Coal.*, 953 F.3d at 1365–67, 1370–71.  On the current record, Commerce has not identified any collusion or evidence necessitating that it draw upon its "inherent authority to defend the integrity of its proceedings."  *See id.* at 1371.  Also inapposite is *Harmoni Int'l Spice Inc.*, a decision by the U.S. Court of Appeals for the Ninth Circuit with no binding authority on this Court, which analyzed proximate cause under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68.  *Harmoni Int'l Spice*, 914 F.3d at 650.

review."  *Id.* § 1675(a)(2)(B)(iv).  The statute lists seven factors that Commerce "shall

consider" in determining whether the U.S. sales were *bona fide*.[7]  *Id.*

§ 1675(a)(2)(B)(iv)(I)–(VII).  Because the prices in a U.S. sale or sales form the basis for

the new shipper's rate, Commerce must ensure that the sales price or prices are not

based on artifice or collusion.  Here, Luscious Seafood does not seek an individual rate

for itself as a foreign exporter or producer but instead claims a need for protection from

unfairly traded imports.  Commerce did not explain how the "new shipper" factors

upon which it relied related to the decision on standing it was required to make in the

review.

### E.  The Finding that Luscious Seafood Did Not Provide Requested Information Did Not Support the Department's Decision

Commerce determined that Luscious Seafood lacked standing because it "failed

to provide, at our explicit request, certain information (relating to the company's

---

[7] Those factors are:

(I) the prices of such sales;
(II) whether such sales were made in commercial quantities;
(III) the timing of such sales;
(IV) the expenses arising from such sales;
(V) whether the subject merchandise involved in such sales was resold in
the United States at a profit;
(VI) whether such sales were made on an arms-length basis; and
(VII) any other factor the administering authority determines to be
relevant as to whether such sales are, or are not, likely to be typical of
those the exporter or producer will make after completion of the review.

19 U.S.C. § 1675(a)(2)(B)(iv)(I)–(VII).

banking) as well as various business documents, which we deemed relevant to our analysis." *Final I&D Mem.* 8 (footnote citation omitted). Those documents included "copies of all requested business registrations and tax documents," as well as "supporting documents regarding the source(s) of its funding." *Standing Mem.* 3–4.

The finding that Luscious Seafood "failed to provide" the requested banking and business documents, as stated in the Issues and Decision Memorandum, *Final I&D Mem.* 8, does not support the Department's denial of standing. It implies, without clearly stating, that Luscious Seafood "failed" to cooperate with Commerce or hindered the Department's standing inquiry. The Issues and Decision Memorandum does not demonstrate that Commerce adequately considered record evidence consisting of the explanations Luscious Seafood provided in its questionnaire responses.

Specifically, with respect to "business documents," Commerce requested, "[f]or each state in which Luscious Seafood[] does business, . . . complete copies of all state filings, including articles of incorporation, business licenses, and tax documents from its initial registration to present." *Supp. Questionnaire* 2. In response to the request, Luscious Seafood provided state registration documentation, a tax receipt pertaining to that registration, and a copy of the latest version of a municipal business license that it stated that it had in its possession. *Supp. Questionnaire Resp.* 1 & Ex. 1. Luscious Seafood explained that it had requested a copy of the latest business license but had not

yet received it.  *Id.* at 1.  It explained, further, that its business activities did not require

it to file an income tax return during the relevant tax year.  *Id.*

Commerce also requested copies of all of Luscious Seafood's "U.S. government

licensing and registration filings, including FSIS Form 5020-1 Registration of Meat and

Poultry Handlers."  *Supp. Questionnaire* 2.  Luscious explained that the form Commerce

requested was inapplicable because the company was not subject to a registration or

inspection requirement of the U.S. Department of Agriculture or of any other U.S.

government agency.  *Supp. Questionnaire Resp.* 2.

With respect to banking information, Commerce requested "[f]or all bank

accounts used by Luscious Seafood[] . . . copies of bank statements for each month from

the company's inception to the end of the POR," as well as "copies of . . . deposit slips

and checks which funded your purchases of the . . . domestic like product during the

POR."  *Supp. Questionnaire* 4.  In response, Luscious Seafood provided "screenshots" of

its bank transaction records.  *Supp. Questionnaire Resp.* 5 & Ex. 5.  In the Standing

Memorandum, Commerce objected that the screenshots "did not identify the owner of

the accounts or the source of the funds therein."  *Standing Mem.* 4.  The court does not

find in the record a factual basis for Commerce to conclude that the screenshots did not

pertain to Luscious Seafood.  Commerce did not send further inquiries requesting

documents or clarifications.

### F. The Finding that Luscious Seafood's Responses "Contained Inconsistencies" Regarding the Timing of Initial Activities and Personnel Involved in its Operations Did Not Support the Department's Decision

Commerce determined that Luscious Seafood lacked standing because its "various responses contained inconsistencies with respect to the timing of its initial activity and the personnel involved in the company's operations." *Final I&D Mem.* 8. Commerce found "[t]hese factors . . . meaningful, especially given the context of the company as a first-time participant in the proceeding." *Id.*

The "timing of . . . initial activity" pertains to the date when Luscious Seafood began operating as a domestic wholesaler. In the Initial Questionnaire, Commerce asked, "[p]lease provide a history of Luscious Seafood[], *i.e.*, when your company was incorporated, first started operating (buying and selling) as a wholesaler, and first started operating (buying and selling) as a domestic like product wholesaler." *Initial Questionnaire* 1. Luscious Seafood responded that "Luscious was incorporated as a Delaware domestic limited-liability company on May 4, 2021. . . . Luscious started operating as a wholesaler and started operating (buying and selling) as a domestic like product wholesaler in 2021." *Initial Questionnaire Resp.* 1. Commerce found that the documentation Luscious Seafood provided is inconsistent with another response, which disclosed that the wholesaling activity began in 2022, not 2021. *Standing Mem.* 4. The court agrees with the Department's finding that the record contains a discrepancy as to the date on which Luscious Seafood began operating as a wholesaler. But the court is

not persuaded that this discrepancy was sufficient to support a denial of standing.  In

other questionnaire responses, Luscious reported purchase transactions, and one sales

transaction, for the domestic like product, all of which it reported as taking place in

2022.  *Initial Questionnaire Resp.* Exs. 2 & 4.  The record does not show that the

discrepancy was other than an inadvertent misstatement.  Here also, Commerce did not

follow up with a request for clarification.

      The inconsistency regarding the "personnel" involved in Luscious Seafood's

operations pertained to the identities and number of the company's owners and

employees.  In response to the Department's request to "provide a detailed list of all

your owner(s) and employee(s) from your inception to present," *Supp. Questionnaire* 2,

Luscious Seafood identified a sole owner as its only employee, *Supp. Questionnaire*

*Resp.* 2.  Commerce found that the name of the sole owner was not the person identified

as the billing contact on a shipping invoice and that the phone number on the business

license was registered to someone other than the sole owner.  *Standing Mem.* 4 (citing

*Frozen Fish Fillets from Vietnam – Rebuttal Factual Information to Luscious Seafood's*

*Wholesaler Supplemental Questionnaire Response* 6 & Ex. RFI-3 (Jan. 13, 2023), P.R.

Doc. 180–85, ECF No. 43-2); *Supp. Questionnaire Resp.* Ex. 6.  Here again, the flaw in the

Department's analysis is that Commerce gave Luscious Seafood no opportunity to

address these issues before denying it standing.

### G.  The Finding that Luscious Seafood "Mischaracterized its Relationship with Another Company" Did Not Support the Department's Decision

In "'determining whether Luscious Seafood['s] commercial activities are *bona fide*,'" Def.'s Br. 32 (internal citation omitted), Commerce considered "whether the sales transaction between [Luscious Seafood] and [one of its] supplier[s] was executed on an arm's-length basis," *Final I&D Mem.* 9.  In the Initial Questionnaire, Commerce asked Luscious Seafood to "provide the total quantity and value of Luscious Seafood['s] purchases of the domestic like product during the POR on a supplier-specific basis" and to "provide additional documentation pertaining to purchases of domestic like product." *Initial Questionnaire* 2–3.  In response, Luscious Seafood identified the quantity and value of the purchases of domestic like product it made during the POR and attached "all relevant commercial documents generated during the course of the purchase, including: purchase-negotiation emails; supplier invoices; proof of payment/receipts, and excerpts from the relevant financial accounts." *Initial Questionnaire Resp.* 2–3 & Ex. 2.

In the Supplemental Wholesaler Questionnaire, Commerce asked Luscious Seafood to describe the relationship between its owner and the owner of one of its suppliers of the domestic like product.  *Supp. Questionnaire* 3.  It also asked Luscious Seafood to "describe in detail your relationship with [the supplier]." *Id.*  In response, Luscious Seafood stated that "[t]here is no relationship with [the supplier]" but

explained that the supplier was owned by the stepfather of Luscious Seafood's owner.

*Supp. Questionnaire Resp.* 3.

The finding that Luscious Seafood "mischaracterized" its relationship to a

supplier is unsupported by the record. Luscious Seafood disclosed the personal

relationship between the owner of Luscious Seafood and the owner of one of its

suppliers. Luscious Seafood's stating that there was "no relationship" with the supplier

was not a mischaracterization when interpreted in light of that disclosure and the fact

that the relationship being disclosed was of its owner, not a relationship of the

corporate entity itself.

The Issues and Decision Memorandum stated that "Commerce was not able to

confirm the *bona fides* of Luscious Seafood['s] commercial transactions," *Final I&D*

*Mem.* 10, but even were it assumed that the purchase from the supplier owned by the

stepfather was made at less than a market price—and Commerce did not find that it

was—the purchase at issue did not make Luscious Seafood's single sale of the domestic

like product a profitable sale. Luscious Seafood disclosed that its sale of the domestic

like product, which was made to an unrelated party, was not made at a profit, and it

identified as the reason logistical issues, including storage costs, affecting that

transaction. *Supp. Questionnaire Resp.* 5–6. The sale was for a significant quantity and

value of a domestic seafood product. Considered on the whole, the disclosed facts

about the domestic sale made by Luscious Seafood, including the fact that it was not

made at a profit, do not support a finding that the sale was other than *bona fide*.  Nor do

the record facts constitute substantial evidence to establish a lack of *bona fides* for the

purchase transactions.

### H.  Plaintiff's Request for a Remand

As a remedy, plaintiff

> requests that the Court remand this action to Commerce for
> redetermination with instructions to find that Luscious was a domestic
> wholesaler interested party in the nineteenth administrative review with
> standing to request a review—and that Commerce should not have
> rescinded its review regarding any companies named in Luscious's
> review request that made reviewable entries during the period of review.

Pl.'s Mot. 24.

Commerce did not review the Vietnam-wide entity in the Final Results, finding

as a fact that "[t]here were no entries of subject merchandise . . . for the Vietnam-wide

entity," *Final Results*, 89 Fed. Reg. at 18,595, and provided that "for all Vietnamese

exporters of subject merchandise that have not been found to be entitled to a separate

rate, the cash deposit rate will be the rate for the Vietnam-wide entity (*i.e.*, $2.39 per

kilogram)," *id*. at 18,596.  The court reaches no decision on the validity of the finding

that there were no entries for Vietnam-wide entity because Luscious Seafood, although

having requested a review of the Vietnam-wide entity at the outset of the review, failed

to contest that finding in this litigation.  *See* USCIT Rule 56.2(c) (requiring a party

contesting an agency determination to identify, where applicable, the findings made by

the agency that are claimed to be "unsupported by substantial evidence").  The court

will not order Commerce to review the Vietnam-wide entity in any further remedy the court may order in this case.

Further, in challenging that the Department's standing determination, Luscious Seafood did not contest the Department's decision on mandatory respondent selection and does not identify mandatory respondent selection in its request for a remedy. Therefore, any remedy the court orders will not direct Commerce to reconsider its selection of mandatory respondents.[8]

For these reasons, the court will order Commerce to reconsider its decision denying Luscious Seafood standing as a wholesaler of the domestic like product and, if determining on remand that Luscious Seafood has such standing, to identify those exporters and producers that were not individually examined and that would receive the separate rate should the Remand Redetermination be sustained.[9]

---

[8] Defendant-intervenor Catfish Farmers of America argues that "Luscious's request would have altered Commerce's mandatory respondent selection, and would thus have impacted (1) the agency's overall workload and mandatory respondent calculations by either adding or substituting a mandatory respondent, and (2) the calculation of the separate rate." Resp. Br. of Def.-Ints., Catfish Farmers of Am., *et al*. 9 (Jan. 17, 2025), ECF Nos. 37 (Conf.), 38 (Public). The court does not address the "mandatory selection" argument because, as noted above, plaintiff did not contest the Department's decision on mandatory respondent selection and did not seek a remedy as to that decision.

[9] This Court contemporaneously is ordering a remand in a case contesting aspects of the Final Results unrelated to this litigation. *Catfish Farmers of Am. v. United States*, Court No. 24-00082 (Dec. 15, 2025). It is possible that the $0.18 per kilogram rate assigned to Can Tho Import Export Seafood Joint Stock Company and to the separate (Continued…)

### III. Conclusion

The court remands the Final Results to Commerce for reconsideration, in accordance with this Opinion and Order, of its determination that Luscious Seafood lacked standing as a wholesaler of the domestic like product.

Therefore, upon consideration of plaintiff's motion for judgment on the agency record, upon all papers and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that Plaintiff's Motion for Judgment on the Agency Record (Sept. 13, 2024), ECF Nos. 33 (Conf.), 34 (Public) be, and hereby is, granted; it is further

**ORDERED** that Commerce shall issue a new determination (the "Remand Redetermination") in which it decides whether Luscious Seafood had standing to request an administrative review of certain Vietnamese exporters and producers, ensuring that any factual findings are supported by substantial evidence on the record and providing an explanation of its reasoning; it is further

**ORDERED** that if Commerce finds that Luscious Seafood had standing as described above, the Remand Redetermination shall identify those exporters and producers that are to receive the separate rate should the Remand Redetermination be sustained; it is further

**ORDERED** that the Remand Redetermination shall be filed with this Court within 30 days of the date of this Opinion and Order; it is further

**ORDERED** that plaintiff and defendant-intervenor shall have 30 days from the submission of the Remand Redetermination to submit to the court comments thereon; and it is further

---

rate respondents will change as a result of the outcome of that remand proceeding. Should the agency so choose, it may issue a single redetermination in response to the court's orders in both cases.

     **ORDERED** that defendant shall have 15 days from the filing of the last comment submission to file its response to the comments submitted.

                 /s/ Timothy C. Stanceu
                Timothy C. Stanceu
                Judge

Dated: December 15, 2025
      New York, New York